Richardson, J.,
delivered the opinion of the court:
On the 29th of July, 1882, Congress passed the following act (22 Stat. L., 723):
1882, Chap. 359. — An Act fpr the relief of citizens of Tennessee.
“ Be it enacted, &c., That the Secretary of the Treasury be, and he is hereby, authorized and directed to remit, refund, and pay back, out of any moneys in the Treasury not otherwise appropriated, to the following-named citizens of Tennessee, or the legal representatives of such as are deceased, the amount of taxes assessed upon and collected from the said named persons contrary to the provisions of the regulations issued by the Secretary of the Treasury under date .of June twenty-first, eighteen hundred and sixty-five, and published in special circular numbered sixteen from the Internal Revenue Office of that date, said refunding having been recommended by the Secretary of the Treasury under date of June nineteenth, eighteen hundred and seventy-three—
“ That is to say:
To William Campbell.......... $8 96
Thomas Dean................................ 47 60
J. B. Dixon........ 13 36
J esse Evans.. .^................................ 48 80
A. H. Evans . /............................... 84 20
Martin Euless................. 9 20
The estate of Preston Frazier, deceased........ 168 00
All of Bedford County, Tennessee.
To J. B. Jeffries...............-.................. . 16 64
Winston W. Gill.............................. 169 60
Joshua M. Hix............................... 14 80
Thomas Lipscomb............................ 99 92
Bryant Landis............... 33 20
William Little................................. 209 04
Thomas B. Marks...........................:. • 28 15
James S. Newton............................. 119 60
Ambrose L. Parks............................ 43 76
Absalom Reeves.........................:____ 37 60
The estate of Alfred Ransom, deceased......... 26 40
G: D. Stephenson............................. 14 00
Mike Shoffher................................ 40 00
Price C. Steele................................ 112 00
Matthew Shearon............................ 38 00
Richard H. Sims ............................ 36 80
William J. Shoffher......................... 56 80
Newton Thompson, second.................... 17 60
J. F. Thompson.....................,......... 11 20
*114 To Lewis Tillman................................ $40 00
Thomas C. Whiteside......................... 80 00
The estate of E. D. Winsett, deceased.......... 35 60
Jackson Wallace ............................. 17 60
Harbert Wiggins.......................... 42 00
A. L. Adams................................. 56 00
Joseph Anderson.............•................ 15 20
William A. Allen ............................. 77 60
Thomas W. Buchanan......................... 192 00
John A. Blakemore........................... 48 00
Charles L. Cannon............................ 26; 00
John L. Cooper........... 118 80
J. H. Cunningham........................... 19 20
John Cortner ................................ 26 00
Lewis Market................................. 868 50
William Gosling............................. 794 00
John J. Jarrett............................... 36 40
Wilson Tarrentine........................... 32 00
All of the county of Bedford, Tennessee.
To George W. Smith............................. 122 00
The estate of Samuel Winston, deceased........ 356 00
Ellis Suttle................................... 104 75
All of Rutherford County, Tennessee.
To George W. House........................ 62 04
Thomas A. Elliott............................ 232 00
Stephen H. Singleton................¡........ 273 00
William H. Wallace..................... 90 40
Susan Rucker........ 88 00
Thomas B. Miles.............................. 164 00
The estate of James G. De Jarnette, deceased .. 283 20
Morris Cross ................................ 32 00
Isham R. Peebles............................. 202 67
William Bosson............................. 232 00
M. H. Alexander............................. 267 68
Emanuel Rosenfield.......................... 42 24
The estate of Thomas Hord, deceased.......... 113 12
Edwin H. Ewing............................. 68 24
Benjamin Beaty............................. 600 16
James M. Haynes............................. 352 00
The estate of Luckett Davis, deceased......... 399 12
Alfred Ross................................. 259 12
Samuel B. Watkins........................... 128 24
John W. Richardson ......................... 500 08
The estate of M. Burgess Wade, deceased...... '528 00
Willie Brown................................ 324 80
Robert D. Reed.............................. 152 00
The estate of John B. Ivimbro, deceased........ 48 00
The estate of James Bass, deceased............ 55 20
Peyton Randolph............................ 44 00
*115 To Edward L. Jordan............................$2,290 00
M. F. Jordan............... 272 00
Felix G. Miller .........................*---- 197 92
S. E. Parrish............................. 83 20
Elizabeth M. Smith......................... . 274 56
Joseph Watkins.............................. 384 00
All of Rutherford County, Tennessee.
To Asa Faulkner, of Warren County, Tennessee ... 2, 700 00
And to William H. Ladd, of Williamson County, Tennessee ...................................... 866 36
“ Said persons and each of them having filed their claims in the office of the Commissioner of Internal Revenue prior to the sixth of June, eighteen hundred and seventv-three.
“ July 29, 1882.”
On the part of the defendants it is contended that this act does not appropriate to the parties named the specific sums mentioned therein, but only so much thereof in each case as is shown to have been assessed and collected contrary to- the provisions of the circular issued by the Secretary of the Treasury under date of June 21, 1865.
In our opinion the act does not admit of that interpretation, nor leave open any question for this court or the accounting officers of the Treasury except the identity of-the claimants with the persons therein named. The language of, the act taken together is too clear to admit of doubt that Congress undertook, as it had a right to do, to determine not only ■ what particular citizens of Tennessee by name should have1' relief, but also the exact amount which should be paid to each one of them.
The act begins by authorizing and directing the Secretary of the Treasury to remit, refund, and pay back “ to the following-named citizens of Tennessee, or the legal representatives of such as are deceased, the amount of taxes assessed upon and collected from the said named persons contrary to the provisions of the regulations issued by the Secretary of the Treasury under date of June 21,1865, that is to say;” and then follow the names of eighty-one persons, with the specific amount to be paid to each, carried out in dollars and cents with great minuteness, varying from $8.96 to $2,700.
Had the enactment ended with the general language immediately preceding the words “ that is to say,” the position taken on the part of the defendants would be correct, because *116 there would have been no method of determining who were the persons intended, or the amount to be paid to each, except through investigation and proof of the facts referred to. Congress did not see fit thus to leave the matter, but immediately thereafter proceeded to specify exactly what particular cases they intended to reach, and exactly to what extent they granted relief in each. They preceded this explicit specification by the important and significant words, “that is to say.” This, phrase is synonymous with “in other words,” “namely,” “to particularize,” “ to be more explicit,” and is employed to convey in a more specific form the meaning and intent of the preceding words. What follows such a phrase must govern what precedes it, so far as there is any difference, because it is the more carefully chosen language of the author to explain his meaning.
Congress, through its committees, when the bill was drafted, or at other stages of its progress, starting with the idea of refunding the taxes of those from whom collections had been made contrary to the provisions of the Treasury circular, seem to have considered in some form and to have passed upon the separate case of each claimant, to the large number of eighty-one, extending the act to great length as compared with what it would have been had the particular names and amounts been' omitted. In doing so they were not bound by the general principle of relief first enunciated, and it is easy to see how, finding some claims in which, though the taxes had not been paid strictly contrary to the Treasury circular referred to, yet they had been assessed and paid under similar circumstances of hardship, and ought in justice to be refunded as much in that case as in the other, they determined to class them together and to grant relief to all alike.
The facts put into the findings at the request of the defendants, even if competent to control the construction of the enactment in any particular, show how Congress might very naturally and with great propriety have proceeded in precisely that manner in framing this act.
The facts are these: The claimant was a citizen of Rutherford County, Tennessee, in the years 1863 and 1864. As such he became liable for two income taxes of equal amount for the year 1863, one the general income tax under the Act of July 1,1862, chapter 119 (12 Stat. L., 373, 374), and the other the special war *117 income tax under tbe Joint Resolution of July 4,1864, No. 77 (13 Stat. L., 417). The first'was made payable June 30, 1864, and the second October 1, 1864.
Rutherford County, as well as the other counties named in the act,, had been in a disturbed condition by the war during the whole year 1863, at times overrun in part by the military forces of the one side and of the other, and the United States had not been able to protect its citizens from burdens imposed by the public enemy nor to secure them in the peaceful pursuit of their occupations. It was not until August 30, 1864, eight months after the expiration of the year for which", these taxes were assessed had expired, that ah internal-revenue assessment division was established in the county. When so established the assessor proceeded to assess upon the claimant and other citizens the income taxes of both classes for the year 1863, and the claimant paid his assessments so made June 6, 1865, Fifteen days after such payment, on the 21st of June, 1865, the Secretary of the Treasury issued a circular in which he stated that he did not deem it advisable to insist, for the present, upon the payment of taxes by citizens in districts where the execution of the laws had been impossible, “ so far as they were payable prior to the establishment of a collection district embraced in the territory in which the tax-payer resides.”
On examining the reason given therein by the Secretary for his action in issuing the circular of June 21, 1865, we find it to apply with equal force to the refund of the special war income tax as to that of the annual income tax for the same year, without reference to technicalities. The only difference between the two classes of taxes is that one became payable two months before and the other two months after the establishment of the collection district in the count5T. But the exact date which the laws had fixed for the payment of the taxes was not the material point on which the circular was founded.
The substantial reason why the citizens of Rutherford County and any other counties in Tennessee should be relieved from the burdens of the harsh laws of taxation imposed upon them, was that during the whole year 1863, for which they had been assessed, they were outside of the protection of the United States Government. The accidental circumstance that in the course of the succeeding year a collection district was established there, in the interval of the three months between the periods *118 fixed by law for the payment of the different taxes, did not affect the merits of the case, nor is it probable that it influenced the action of the Secretary of the Treasury. The hardship of subjecting people thus situated to taxation was precisely the same in both cases.
Congress might well have taken that just and liberal view of the matter, considering that taxes'assessed under such circumstances, whether collected before or after the issuing of the Treasury circular, or whether they were general income taxes or special war income taxes, payable the one before and the other after the collection district was established, they might have held that all came within the spirit if not the exact terms of the Secretary’s circular, and were equally entitled to relief. To give effect to such conclusion it was not necessary to set out in the act their interpretation of the circular to which reference was made, nor the reasons why they departed from its strict application in every case in passing upon the separate claims before them. It must not be overlooked that Congress was not dealing with legal rights under the circular, for the claimants had acquired no such rights, and therefore mere technicalities would not be much considered in granting relief.
But whatever induced Congress to take up the several cases of the numerous persons named in the act, and to grant to them from the public Treasury the specific sums of money therein mentioned, whether it was for reasons set out in the act itself, or for other and different reasons, their action is final and conclusive, and cannot be reviewed by this court nor by any executive officers. It would be an unwarranted assumption of power to review elsewhere the facts and reasons which Congress states for granting money in any of the numerous special acts passed for the relief, of individuals persons, and to deprive such persons of the money appropriated for them, merely because it is held here or in the Treasury Department that the conclusions of the act are not warranted by the facts and reasons upon which they purport to be founded.
The act now under consideration makes reference to other facts besides that of the Treasury circular, and if one is to be inquired into all may be.
The act recites that the Secretary of the Treasury, under a given date, recommended the action taken by Congress, and also that the persons named, and each of them, had “filed their *119 claims in the office of the Commissioner of Internal Bevenue prior to the 6th of June, 1873.” There is no more reason why it should be made to appear that Congress was right in assuming that the claims allowed came within the terms of the Treasury circular than in assuming that the Secretary had recommended each and every one of them, and that they had all been filed with the Commissioner prior to June 6, 1873. Congress might have been mistaken in one or all these particulars, but they so enacted, and whatever is enacted, right or wrong, constitutes the law and the facts of the case.
A mistake of fact upon which the action of Congress is predicated does not control the positive enactment founded upon, it. Such a mistake might be a good cause for the repeal of an act by the power which passed it, but would be no justification for a court or the executive officers to set it aside or to restrict its effect.
This act is not peculiar on account of its recital of facts. Such recitals abound in the multitude of special acts passed for the relief of individual persons, and to require all the facts recited to be proved in court or elsewhere before the parties can obtain the money granted to them would be an unjustifiable hardship. ' Take, for example, the Act August 7, 1882, chapter 482 (22 Stat. L., 737): It authorizes and directs the Secretary of the Treasury to pay to the executors of F. the sum of $7,684.70, “to reimburse the estate of the said F. for losses sustained by him while Secretary of the Senate in making good the deficit in the accounts of the financial clerk. No one would seriously urge, we think, that Congress had not fixed the amount to be paid, but had left it to be determined by)proof before the accounting officers, or before this court, if suit should be brought, of the exact amount of losses incurred.
In that act, as well as in the one involved in the present suit, we find an entire absence of words implying the vesting of discretionary power over the matter in any public officer or court, such as are found in another class of acts where it is clearly intended to leave the payment of money, in whole or in part, to the judgment of others upon further investigation. Instead of merely authorizing the Secretary to pay, as is frequently the case, it authorizes and directs him to do so. The words “or so much thereof as may be uecessary,” common in appropriation acts, following and qualifying amounts appropriated, are omit *120 ted. In this act, at the beginning of the list, are inserted the words already commented upon, “that is to say,” which particularize and make definite and explicit the amounts to be paid. Sometimes express instructions are inserted directing a re-examination and settlement by the accounting officers or others, but no such directions are to be found in this act.
The mere fact that it is the Secretary of the Treasury who is authorized and directed to pay the money does not clothe Mm with discretionary power in the matter. That direction is a common formula in special or private acts, and does not take the case out of the ordinary rules and practices for the settlement of accounts in the Treasury Department.
The claimant’s right to the money rests? upon the act of Congress, and does not depend upon any order of the Secretary. The refusal of that officer or of the accounting officers to pay it or to order it to be paid cannot defeat the right which the claimant derives from higher authority, the law-making power.
Having been refused payment at the Treasury, the claimant has a remedy in this court, because his claim is founded upon a law of Congress, and so is within the express terms of Revised Statutes, section 1059, conferring jurisdiction on the Court of Claims.
Judgment will be entered for the claimant for the sum of $1,145.