Weldon, J.,
delivered the opinion of the court:
On April 29,1891, the plaintiff filed a petition against the United States and the Yuma Indians under the provisions of the act entitled “An act to provide for the adjudication and payment of claims arising’ from Indian depredations,” passed on the 3d day of March, 1891. (1 Supp. Rev. Stat., 2d ed., p. 913.)
Upon the filing of the petition, service of it was made on the Attorney-General of the United States, pursuant to the fourth section of said act. On the 29th of January, 1892, the Assistant Attorney-General in charge of the defense of cases under said act made the following suggestions in writing:
“And now comes the Attorney-General, appearing specially on behalf of the defendant Indians for the purpose of this mo *280 tion only, and objects to tbe jurisdiction of tbe court over tbe defendant Indians for the following reasons, to wit:
“(1) No service of petition, summons, process, or notice of any kind in this action has been made upon tbe defendant Indians, or upon any Indian or Indians, agent, or representative of said tribe, band, or nation.
“(3) Neither said defendant Indians nor any representative, attorney, or agent of said tribe, band, or nation has appeared in said action, or consented to tbe adjudication thereof, or to tbe jurisdiction of said court, or has bad any notice or knowledge whatever of tbe pendency of these proceedings.”
On tbe 10th of February, 1892, tbe following motions were iiled:
“And now comes tbe Attorney-General, appearing on behalf of tbe United States, and moves tbe court to cause a notice of tbe pendency of this action to be given to the defendant Indians as required by law.”
And tbe further motion:
“And now comes tbe Attorney-General, appearing on behalf of tbe United States, and moves tbe court; that the farther prosecution of this action be stayed in order that tbe Attorney-General may give notice of the pendency thereof to tbe defendant Indians as provided by law.”
Tbe questions raised by tbe suggestions and motions call upon tbe court to give construction to tbe statute upon tbe subject of tbe service of process, in order to bring within the jurisdiction of tbe court the necessary parties to tbe proceeding.
Questions- affecting tbe jurisdiction of a court are always important and vital, because on them depends tbe legality of tbe exercise of judicial power. If a court assumes jurisdiction of a subject-matter, or of tbe person of parties, without warrant of law, its proceedings are a nullity, and a dangerous invasion of tbe rights of those affected by its jurisdiction and decrees.
It is often difficult to determine who are proper parties in courts of ordinary civil jurisdiction, and much time has been spent by the bar and the bench, in tbe discussion and decision of the question as to who are proper parties. Law books upon that subject alone have been written, and tbe reports abound in innumerable cases, devoted to tbe inquiry as to who should appear on either side of a controversy.
*281 Hitherto that question has been of little dispute in this jurisdiction, and we venture to state, that this is the first time in the history of the court, when the inquiry as to who should be defendant has been raised for adjudication.
The issues made by the motions, affecting, as they do, the jurisdiction of the court in a subject-matter of litigation embracing very many cases and involving a very large amount of money, become most important in the future administration of the law upon the subject of Indian depredations. The motions, going as they do to the right of every litigant, have been most ably argued upon the part of the United States by the attorneys representing the defense and by attorneys representing a large number of cases.
The first motion embodies the substance of a motion to continue the case Decause of the want of service on a necessary defendant, and the last embodies the substance of a motion to continue until the Government communicate to the Indians the fact of the pendency of the suit.
Logically construed and legally applied, these motions make it the duty of the court to decide whether, under the statute, the Indians are in a legal sense a defendant, having the right to a notice, before the court is empowered to proceed in the adjudication of the rights of the claimant.
In the oral discussion and in the briefs submitted on either side of the question, the relation subsisting between the United States and the Indians, from the earliest period of our history as a nation has been ably discussed and examined. Not only have many decisions of the Supreme Court been cited, but many statutes of the United States have been quoted for the purpose of illustrating the relation which iii law has subsisted between the Government and the Indian nations and tribes, which have inhabited the territory of the United States during our entire history.
In order to present the questions raised by these motions, counsel have very ably examined and discussed the nature and organization of judicial power, and especially the nature and constitution of this court as it has been developed since its formation under the original act of its creation.
In and on all these matters the court has been enlightened upon the many phases assumed by human rights, as they become subject to the incidents of judicial power.
*282 If it be true, as insisted by tbe defendants, that the Indian tribe, band, or nation alleged to have been the parties guilty of the wrong is a necessary party and a defendant within the ordinary meaning of the law, then the court is without jurisdiction as to persons, until a notice in some form is given to such Indians.
In this proceeding the court is in the exercise of a jurisdiction that springs from the provisions of a statute; and many of the decisions made by the different courts which have been cited by counsel are based upon the law apjilicable to courts exercising a jurisdiction incident to them from the great body of the common law, from which in a large measure emanate the powers of the courts. The “ due process of .law” and “the law of the land” in their extended signification are intended to, and do, protect persons in the enjoyment of their rights, free from the force of judicial proceeding, unless they have had an opportunity to be heard, subject to the special features of each jurisdiction. The relation of the Indians in their tribal conditions to the United States is the result of that special and peculiar policy, which the United States have adopted for the government and control of the Indians, from the organization of the Government.
The Indian question has been among the great problems of the age, and, consistent with the manifest destiny of civilization to assume the place of barbarism, the treatment of the American Indian has been perhaps as humane as it could have been, under all the circumstances of the situation.
The civil policy of the United States, as it has been developed in the form of treaties and statutes, has been radically different from the policy which they have pursued in the government and protection of the civilized order of men. The courts have not been opened to the Indian, and the civil liberty which is the boast of our system has not been given to the Indians in any period of our history.
The decisions of the Supreme Court define the relation of the Indians to the United States. In the case of Worcester v. The State of Georgia (6 Peters, 515) it is said:
“ The treaties and laws of the United States contemplate the Indian Territory as completely separated from that of the United States, and provides that all intercourse with them shall be carried on exclusively by the Government of the Union.”
*283 In tie ease of tie Cherokee Indians v. The State of Georgia 5 Peters, 1), it is said:
“ Tie relation of tie Indians to tie United States is marked by peculiar and cardinal distinctions wiici exist nowiere else. * * * Tiey may more correctly, periaps, be denominated domestic, dependent nations. Tiey occupy a territory to wiici we assert tie title, independent of tieir will, wiici must take effect in point of possession wien tieir rigit of possession ceases; meanwiile tiey are in a state of pupilage. Tieir relation to tie United States resembles tiat of a ward to iis guardian.
“ Tiey look to our Government for protection, rely upon its kindness and its power, appeal to it for relief for tieir wants, and address tie President as tieir Great Fatier. * *' * Tie court ias bestowed its best attention on tiis question, and after mature deliberation tie majority is of opinion tiat an Indian tribe or nation witiin tie United States is not a foreign State in tie sense of tie Constitution, and can not maintain an action in tie courts of United States.
“If it be true tiat tie Oierokee Nation iave rigits, tiis is not tie tribunal in wiici tliose rigits are to be asserted. If it be true tiat wrongs iave been inflicted and tiat still greater are to be apprehended, tiis is not tie tribunal wiici can redress tie past or prevent tie future.”
In tie same direction of thought the Supreme Court, by Justice Davis, said in tie case of United States v. Forty-three gallons of Whisky (3 Otto, 188):
“ In tie record of tie judicial determinations of tie court there are few decisions of greater interest and importance than those wiici were pronounced in Cherokee Nation v. Georgia (5 Pet., 1), and Worcester v. Georgia (6 Pet., 515). Chief-Justice Marshall in these cases, with a force of reasoning and extent of learning rarely equaled, stated and explained the condition of tie Indians in tieir relation to tie United States and to tie States witiin whose boundaries tiey ived; and tiis exposition was based on tie power to make treaties and regulate commerce with tie Indian tribes. * * *
“Tie only efficient way of dealing with the Indian tribes was to place them under tie protection of the General Government. Tieir peculiar habits and character required tiis, and tie history of the country ias shown tie necessity of keeping them separate, subordinate, and dependent. Accordingly treaties iave been made and laws passed separating Indian territory from tiat of the States, and providing tiau intercourse and trade with tie Indians should be carried on solely under the authority of tie United States.”
*284 In tlie United States v. Kagama (118 U. S. R., 375), Mr. Justice Miller, in referring to the two Georgia cases, said:
“Perhaps the best statement of their position is found in the two opinions of this court by Chief-Justice Marshall. These opinions are exhaustive. * * *
“In the opinions in these cases they are spoken of as “wards of the nation,” “ pupils,” as local dependent communities. In this spirit the United States has conducted its relations to them from its organization to this time. But after an experience of one hundred years of the treaty-making system of the Government Congress has determined upon a new departure— to govern them by acts of Congress.” * * *
In the case of Choctaw Nation v. The United States (119 U. S. R., 1), the court said:
“ On the other hand, the Choctaw Nation falls within the description, in the terms of the Constitution, not of an independent State or sovereign nation, but of an Indian tribe. As such it stands in a peculiar relation to the United States. It was capable, under the terms of the Constitution, of entering into treaty relations with the Government of the United States, although, from the nature of the case, subject to the power and authority of the laws of the United States when Congress should choose, as it did determine in the act of March 3,1871, embraced in section 2079 of the Revised Statutes, to exert its legislative power.”
In the same case the Supreme Court said:
“The recognized relation between the parties to this controversy, therefore, is that between a superior and an inferior, whereby the latter is placed under the care and control of the former, and which, while it authorizes the adoption on the part of the United States of such policy as their own public interests may dictate, recognizes, on the other hand, such an interpretation of their acts and promises as justice and reason demand in all cases where power is exerted by the strong over those to whom they owe care and protection.”
The relation indicated by these decisions has been deduced from the legislation of Congress from the earliest period, the Supreme Court recognizing the constitutional right of Congress to deal with the Indian tribes, pursuant to the general policy of subordinating their rights to the control of the political branch of the Government.
Commencing with the act of 1790, through more than a century Congress have legislated on the rights of the Indians on the theory that they were dependent and helpless, to such an *285 extent, that tbe nation bad a right to assume unlimited control of tbem.
Tbe Act of 1834 (4 Stat. L., p. 731) entitled “An act to negulate trade and intercourse with tbe Indian tribes and to preserve peace on tbe frontier,” is a clear indication of that theory. By tbe terms of this statute Congress in many ways recognized tbe dependency of the’ Indian tribes and their subordination to such restrictions and regulations as might be deemed necessary and expedient by tbe Government in and through its legislative and executive power.
Section 2103, Revised Statutes, declares that—
“No agreement shall be made by any person or any tribe of Indians, or individual Indians not citizens of tbe United States, in reference to annuities, installments, or other moneys, claims, demands, or thing, unless such contract or agreement be properly executed before a judge of a court of record and bear the approval of the Secretary of the Interior and Commissioner of Indian Affairs endorsed upon it.”
The civil rights incident to States and individuals as recognized by what may be called the “ law of the land” have not been accorded either to Indian nations, tribes, or Indians. Whenever they have asserted a legal capacity in the maintenance of their rights, it has been in pursuance of some statute of the United States specially conferring upon them the civil rights of suitors. In all the cases in this court in which the interest of an Indian tribe has been the subject of litigation the proceeding has been under special statute conferring the right upon the claimant to bring a suit. The ordinary jurisdiction as to persons has never been sought to enforce against the United States the fulfillment of their obligations or discharge of their duties. In this connection it may be profitable to quote “ Due process of law in each particular case means such an exercise of the powers of the Government as the settled maxims of the law permit and sanction, and under all such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs.” (Cooley on Constitutional Limitations, p. 441). “ Due process of law” and the “ law of the land” differentiate themselves as they are applied to different conditions and different subject-matters.
In pursuance to the general policy of the United States, the statute of the 3d of March, 1891, providing a jurisdiction in *286 this court of cases arising from Indian depredations was passed, and under these motions we are called upon to construe that statute on the subject of notice and parties.
The jurisdiction provided by the terms of the statute in this court supersedes the jurisdiction of the Secretary of the Interior, in whose Department these claims have been pending and in which many of them have been adjudicated. The power of the Department in the investigation and determination of the claims subject to the supervision of Congress was complete, but wanting in many of the characteristics of that “ due process of law” which in many proceedings require that notice be served upon every person whose interest or rights are affected by the finding, judgment, or decree. Statutes are ordinarily plain, and need only their own words for their interpretation. In this law no phrases of technical or doubtful import are used. Statutes are to be read on the lines, and not between the lines, to be properly interpreted. As is very tersely stated in a brief in this case,'
“The clearest guide to the meaning of a statute is the statute itself. If words are plain, there is no room for construction or interpretation.”
The third section of the act provides: “That all claims shall be presented to the court by petition.” The presentation of the claim may be regarded as the commencement of the suit, because from that act the jurisdiction of the court attaches to the subject matter of the petition. But the court would have no right to proceed until the pendency of such suit is properly notified to the parties entitled to notice. This court being'a court of special jurisdiction, it has always been provided by law how notice should be given to the Government, and that form must be strictly pursued.
The fourth section, with its provisos, is the portion of the statute which relates more particularly to the subject of parties and service of process. It provides:
“The service of the petition shall be made upon the Attorney-General of the United States in such manner as'may be provided by the rules or orders of said court. It shall be the duty of the Attorney-General of the United States to appear and defend the interests of the Government and of the Indians in the suit, and, within sixty days after the service of the petition upon him, unless the time shall be extended by order of the court made in the case, to file a plea, answer, or demurrer *287 on tbe part of tbe Government and tbe Indians, and to file a notice of any counterclaim, set-off, claim of damages, demand, or defense whatsoever of tbe Government or of tbe Indians in tbe premises:
“ Provided That any Indian or Indians interested in tbe proceeding may appear and defend, by an attorney employed by snob Indian or Indians, with tbe approval of tbe Commissioner of Indian Affairs, if be or they shall choose so to do.”
By tbe terms of this statute, tbe defendants placed themselves in tbe legal position of being responsible for tbe torts of tbe Indians, and in pursuance to tbe policy of charging to tbe Indians tbe damages of their own depredations, tbe law provided that tbe Attorney-General of tbe United States should appear to defend the interest of tbe Government and tbe Indians, and that tbe service of tbe petition should be on that officer. This is tbe only service of process or notice provided by tbe statute. If tbe law bad been silent upon the subject of service, a notice of some kind would have been necessary to complete tbe jurisdiction of tbe court; but when tbe law by its own terms prescribes tbe character of tbe service, does that not exclude tbe necessity of any other or additional service?
The second clause of tbe second section provides that any Indian or Indians interested may appear and defend by an attorney employed by such Indian or Indians, with tbe approval of tbe Commissioner of Indian Affairs; but it does not follow from this provision in favor of tbe rights of tbe Indians that they are entitled to notice before tbe jurisdiction of tbe court is consummate under the statute.
Tbe defendants are the sovereign guardian of tbe Indians, protecting them in their rights against tbe claims and encroachments of tbe citizen, and it is to be presumed that in any proceeding tbe effect of which is to impair or injure their rights tbe defendants will be vigilant in tbe protection of every possible right which they may have.
Tbe General Government, in its legislative and executive departments has been tbe special guardian of tbe Indians, and it is to be presumed, when their rights become tbe subject of judicial administration that tbe same care and guardianship will be extended over them.
It is insisted, that if tbe statute of our jurisdiction intends to affect tbe rights of tbe Indian without notice to him as an or *288 dinary defendant, then it is unconstitutional and the whole system fails.
If the Yuma Indians have funds in the control and custody of the United States, the United States have a perfect legal right to deal with it as they see fit, and the reference of a question to this court affecting the integrity of that fund does not confer upon the Indians the legal rights of a suitor.
The statute taken as a whole has some peculiar provisions as to the Indians ; but as the fourth section provides that the service of the petition shall be upon the Attorney-General, that he shall appear and defend the interests of the Government and the Indians, and shall file the proper papers on which to defend the interest of both, that a failure upon his part to do so will not prevent the claimant from proceeding under such rules as may be prescribed by the court5 considering that the Indians are peculiar in their relations to the United States in not having incident to them the common-law rights of suitors, that their standing in courts is purely statutory and within the discretion of the United States, we are of opinion that the Indians are not defendants in the proceedings in the sense of being distinct from the United States entitled to notice, and therefore the first motion that notice be served on the Indians is overruled.
As to the second motion, it embraces the substance of a motion to continue until notice can be given to the Indians so that the defendants may be prepared to litigate the cause on its merits.
The United States are entitled, as are all parties, to a reasonable time to prepare their cause, and if in any case they are not ready, upon application time will be given; but it is expected that the defendants, like other litigants, will use reasonable diligence in being ready for trial, so that suitors will not be unreasonably delayed in the prosecution of their cases. The motion for a continuance will be disposed of as the necessities of each case seem to require.