Weldon, J.,
delivered the opinion of the court:
In the amended and substituted petition it is alleged in substance as follows:
That the claimant is a citizen of the United States, residing in the State of Indiana; that he was duly appointed and commissioned as first lieutenant Company H, One hundred and tenth Ohio Infantry Volunteers, and was duly enrolled at a general rendezvous at Piqua, Ohio, on or about the 8th day of August, 1862, and thereupon entered upon duty as first lieutenant as aforesaid. Claimant further alleges that at said last-mentioned date there was a vacancy in said office, to which he was appointed or commissioned, and that his command was assigned to duty in the field, and that he performed the duties pertaining to said grade; that he tendered his resignation because of disabilities incurred in the service in the line of duty, which was accepted on or about the 28th day of February, 1864, in the State of Virginia, and that he was thereupon honorably discharged the service of the United States. It is further alleged that, under the provisions of the act of Congress approved January 29, 1813 (2 Stat., 726), ho is entitled to—
“Be allowed his pay and rations, or an equivalent in money, for such term of time as was (shall be) sufficient for him to travel from the place of discharge to the place of his'residence, computing at the rate of twenty miles per day.”
Claimant further alleges that he made a claim for an equivalent in money of his pajr and rations as aforesaid to the proper accounting officers of the Treasury, which said claim was disallowed by the Treasury Department on January 6, 1901, for reasons as follows:
“He was paid pay and allowances in full as first lieutenant from the 8th day of August, 1862, to date of discharge. His muster as first lieutenant was amended to date from August 9, 1862. Pay and allowances to date of receipt of discharge order by officer were paid by settlement No. 154571, confirmed December 31, 1891, and travel allowances were disallowed by same settlement, he having been discharged for his own personal convenience.”
Claimant further alleges that he was not discharged by way of punishment for offenses; that when he entered the service of the United States he was subject to the mustering regula-
*300 tions then in force in the Army of the United States; that he brings this suit under the provisions of the act of Congress approved February 24, 1897 (29 Stat. L., 593).
The legal effect of the demurrer is an admission of all matters alleged in the petition properly pleaded; and the question is, Do those matters constitute in law a legal or equitable cause of action upon which the plaintiff has the right to recover? It is insisted by the defendants’ counsel that under the statute cited in the plaintiff’s petition, and on which he predicates his claim to recover, there is no right, and that whatever rights he may have had by the act of January 29, 1813 (2 Stat. L., 796), are now barred, not having prosecuted his claims within six years after the cause of action arose.
Upon the other hand, it is insisted by counsel for the claimant that the legal effect of the act of 1897 is to reopen the account between the plaintiff and the United States, and thereby to revive the right which accrued to plaintiff under the act of 1813 (supra); that but two things are necessary to bo shown, to wit, that he was “duly appointed or commissioned to be an officer of the volunteer service during the war of the rebellion,” and that he was “subject to the mustering regulations at the time applied to members of the volunteer service” and “that under some law regulating the pay and allowance of such officers he was not paid, or properly paid, for his service. ” The logical effect of this contention is to open de novo the account of the plaintiff and the United States, and upon the whole case to determine the legal and equitable rights of the parties. It does not seem to the court that the act of 1897 was intended to open the account of all the soldiers serving in the Army of the United States during the war contemplated by the act.
The statute provides:
“That any person who was duly appointed or commissioned to be an officer of the volunteer service during the war of the rebellion, and who was subject to the mustering regulations at the time applied to members of the volunteer service, shall be held and considered to have been mustered into the service of the United States in the grade named in his appointment or commission from the date from which he was to take rank under and by the terms of his said appointment or commission, whether the same was actually received by him or *301 not, and shall be entitled to pay, emoluments, and pension if actually mustered at that date.”
We are asked to construe the statute in the light of the legislation preceding the enactment of the law of 1897, and the alleged policy of the defendants to do justice and deal liberally with the soldiers; and in that connection we are cited to the case of Hosmer v. United States (9 Wall., 432), in which the Supreme Court has spoken of the disposition of the Government to deal liberalty with men who peril their lives for their country. As has been said, and often repeated, courts have no policy and their only right is to determine and apply the law as to the judicial mind it may seem to exist. The limitation on the court is to construe the statute as its terms and words may indicate the will and purpose of the legislature.' The statute in the first instance is to bo read on the lines, not between the lines, and that construction given which is best sustained by the words, of the statute, taking into consideration the circumstances under which the law was enacted. As has been quoted in the case of Jaeger v. United States (27 C. Cls. R., 278), “The clearest guide to the meaning of the statute is the statute itself. If words are plain, there is no room for construction or interpretation.”
As has been said by the Supreme Court:
“Of course our duty is to give effect to the law of Congress touching this matter. But we must ascertain that will from the words Congress has chosen to apply, interpreting such words according to their ordinary meaning as well as in the light of all the circumstances that may fairly be regarded as having been within the knowledge of the legislative branch of the Government at the time it acted on this subject.” (Dewey v. United States, 178 U. S. R., 510; Same v. Same, 35 C. Cls. R., 178.)
In the case of Maxwell v. Dow (176 U. S., 602) the Supreme Court has substantially announced the same doctrine as a safe rule in the construction of a statute.
The defendant is not pleading a set-off in this proceeding, but the bar of the statute of limitations against the claim made by the allegations of the petition. If the United States were insisting on an indebtedness of the claimant, founded upon his services in the war and the payments made to claim *302 ant for such services, in that case the defense might have the legal effect to open the account, and the court might then determine whether upon the whole account there was an indebtedness. It is insisted by counsel for the claimant that the act of 1897 embraces “a new promise to pay an old debt.” If that be true, the law must be applied to the debt which is intended by the purpose of the statute. The claimant has alleged his cause of action as based upon the act of 1897, and in order to recover on that theory he must bring the demand which he claims within the letter or manifest spirit of the law. It is true that the technical rules of pleading are not applicable in the jurisdiction of this court; and while the claimant is not absolutely bound to recover as he alleges, as at common law, he must show a right to recover upon some legal theory.
The statute of 1897 was passed for a specific purpose clearly indicated in its terms, and that is to allow any person duly appointed or commissioned as an officer, and who was subject to the mustering regulations, pay from the time he was to take rank under the appointment or commission, and that such pay, emoluments, or pension shall be paid him as if actually mustered at the date of his rank. The object of the statute is to pay emolument which accrued during the time between the date of rank and muster.
The demand in this proceeding did not accrue during that period, but accrued, if at all, when the plaintiff was discharged from the -service and became a citizen. The claim contemplated by the statute has reference to a claim accruing at a certain period of service; but the claim sued for did not accrue during that period. One is for service and the other is for traveling expenses upon the termination of his service. The demurrer is sustained and the petition dismissed.