WELDON, J.,
delivered the opinion of the court:
The petition alleges that the claimant is the administratrix of Samuel W. McCormick, deceased; that the deceased was mustered into the service of the United States for a period of three years as second lieutenant in the Seventy-third Illinois Volunteers on August 21, 3862, and was discharged as such July 2, 1863; that at the death of the said deceased, on April 23, 1882, the defendants were indebted to him on account of pay proper subsistence, servants’ pay, and allowance from the 21st of August, 1862, to Juty 5, 1863; that the defendants under the act of June 11, 1896, settled and adjusted the claim, of said decedent and allowed to petitioner as administratrix the sum of $570.82, the sum being for pay from December 3, 1862, to July 5, 1863, and subsistence for the same period. It is further alleged that an appeal was taken to the Comptroller of the Treasury and that the appeal was dismissed under the provisions of the eighth section of the act of July 31, 1894 (28 Stat. L., 207), on the ground that claimant had accepted pay on the said settlement.
It is further alleged that neither claimant as administratrix nor the decedent in his lifetime was paid any pay or allowance on said account from August 21, 1862, to December 3, 1862, and that claimant is now entitled to have and recover from the defendants, under the act of Congress approved February 24, 1897 (29 Stat. L., 593), and the act of June 11, 1896 (29 Stat. L., 448), the sum of $500.
To the petition the defendants filed a demurrer upon the ground that the petition does not allege facts sufficient to constitute a cause of action.
The act of June 11, 1896 {supra), provides as follows:
“Back pay and bounty: For payment of amounts of arrears of pay of two and three year Amlunteers that may be certified to be due by -the accounting officers of the Treasury during the fiscal year eighteen hundred and ninety-seven, three hundred thousand dollars.” (29 Stat. L., 448.)
The contention of the claimant is, that by virtue of the provisions of that act, there was an appropriation of money by'Congress for the purpose of paying the alleged indebted *529 ness from the United States to the decedent; that the effect of the statute was the removal of the statutory limitation, and the recognition of the right of the claimant to recover what was in fact due the decedent at the time of his death, from the time he should have been paid for the services rendered by him as a soldier to the time from which he was paid. The legal effect of the demurrer is to admit all matters properly pleaded; the service of the decedent for the time alleged and the nonpayment bjr the defendants are the important facts conceded by the demurrer.
It is insisted on the part of the defense in support of the demurrer that the act on which the claimant bases her right to recover does not give this court jurisdiction to adjust by judicial investigation the claim of the petitioner; that under, said act the matter of the claim of soldiers for back pay and bounty was by the intent and purpose of Congress left as former statutes had provided, to wit, in the jurisdiction of the Treasury Department; and the onty change was a change of policy from the payment of claims after they had been settled by the Department by specific appropriation to an appropriation of a lump sum of three hundred thousand dollars to be paid upon the adjustment of the Department as under the old statutes;, that the matter, under the acts of February 24, 1897, and the act of June 11, 1896 (supra), to wit, the adjustment and payment of the claim, are still in the exclusive jurisdiction and control of the Treasury Department. As against that theory of the law, counsel for olaiment contends that by the acts of February 24,1897, and June 30,1897 (supra), there is a complete right on the part of the claimant, and so especially under the act making appropriations for sundry civil expenses of the Government for the fiscal year ending June 30, 1897 (29 Stat. L., 448), and that the words, “that may be certified to be due by the accounting officers of the Treasury Department during the fiscal year eighteen hundred and ninety-seven,” are of no practical effect of limitation upon the right of the claimant; that the right to pay is recognized and provided by the statute, and that if the words are to have an}»practical effect it is' simpty as an “ auxiliary remedy to enable claimant specially to procure redress.”
*530 By the act making the appropriation Congress certainty intended that any arrears of pay or bounty should be paid, and that right should be recognized to the full extent of giving the soldier an opportunity of establishing his claim, and thereby practically asserting his right to payment and redress.
Under the policy or practice relied on by the counsel for the defendants, a claim was first adjusted by the accounting officers of the Treasury, and then, as has been said, specific appropriations were made in payment of such allowance or adjustment; under the new policy an appropriation is made to cover the claim of any and all persons who may have a just claim for “back pay or bounty.”
The ■ admission of the defendants of the allegations of the petition concedes the claimant as the personal representative of the decedent, to be a person having the qualification of having an unpaid balance of pay. She has sought the jurisdiction of the Treasury where her claim should have been paid and it has been refused. The claim is founded upon, and is the creation of a statute of the United States, which is one of the fundamental' grounds of the jurisdiction of the Court of Claims; and therefore the only question for us to determine is whether by the terms of the law there is exclusive jurisdiction in the accounting officers of the Treasury Department. If that jurisdiction is exclusive then such jurisdiction is a limitation on the jurisdiction of this court and the demurrer must be sustained.
In that connection we are referred to the Medbury case (173 U. S., 492).
That was a proceeding to recover the price paid by the claimant for land within the limits of a railroad grant, under the act of June 16, 1880, chapter 244, and it was held by the Supreme Court that the Court of Claims had jurisdiction of the subject-matter of the claim; but that the claimant had no right to recover on the merits upon the ground that no mistake was made in the entry and that the United States was not liable upon the failure of the company to construct the road.
The court said:
“After the refusal (to pay) the question then arises as to the remedy, and we look in vain for any in the act itself. We *531 can not suppose that Congress intended in such case to make the decision of the Secretary final when it was made on undisputed facts. If not, then there is a remed}r in the Court of Claims, for none is given in the act which creates the right. The procedure for obtaining the repayment as provided must be followed, and when the application is erroneously refused the partj'- wronged has his remedy, but that remedy is not furnished by the same statute Avhich gives him the right. ”
The Supreme Court sustained the judgment of this court, but upon a different theory of the law, placing the affirmation upon the ground that there being no guaranty on the part of the United States that the road would be built there was no liability on the part of the defendants, and, therefore, conceding the jurisdiction of the court, there was no right to recover.
A question similar to the one involved in this controversy was the subject of adjudication in this court in the case of Hukill v. The United States (16 C. Cls. R., 562), which was a suit based upon an appropriation act to pay certain mail contractors in the Southern States who had contracts for carrying the mail prior to the secession of those States.
It is said in that case in substance, that an appropriation for the payment of a particular demand or class of demands includes a recognition of their legality and justice, and is equivalent to a mandate to the officei’s of the Treasury to pay the same; and in that connection it is also said in substance that this court has jurisdiction of claims which Congress acknowledges as right against the Government; that they come within the intent of the statute (Rev. Stat., sec. 1069), declaring that the court has jurisdiction to hear and determine all claims founded upon a law of Congress.
In the case of Simon (19 C. Cls. R., 601) it is decided,
“When Congress appropriates money for the payment of a designated claim, or class of claims, already barred by the statute of limitations, it must be inferred that the legislative intent was to give a new promise, founded upon the old consideration. ”
Applying that principle of law to the case at bar, it must follow that the appropriation act of June 30, 1897 (supra), is a promise on the part of the United States to pay such soldiers as come within its designation whatever may be due *532 them notwithstanding the lapse of time applicable to such claims.
Congress assumes that the accounting officers of the United States will settle the claim in accordance with the rights of a claimant, and therefore the accounting or disbursing officers first have jurisdiction, not necessarily exclusive, of the payment of the claim. If a claimant has the right of recovery it is not necessary that ho should resort to the accounting-department of the Government in the first instance; he may seek that forum of adjudication which has .the right to pass judicially on the question. That right may, however, in the discretion of Congress, be subject first to a demand on the disbursing or paying branch of the public service. (Clyde v. The United States, 7 C. Cls. R., 262).
It is held in substance in the case of Huffman v. The United States (17 C. Cls. R., 55) that when Congress validates a class of claims, appropriating money to satisfy them, and directs the Secretary of the Treasury to examine and pay them, the cause of action is not dependent on the Secretary, and suit may be maintained on the original claim.
The Jordan case (19 C. Cls. R., 108) involved the question of the jurisdiction of the court in a matter similar to the case at bar. In that case the court assumed jurisdiction, and an appeal was affirmed by the Supreme Court (113 U. S., 418). The only difference between that case and this is, that in the Jordan case the amounts due each person were siiecified b}T the act of appropriation. But that difference is not sufficient to effect the rights of the petitioner adversely in this proceeding.
In the case of Blount v. The United States (21 C. Cls. R., 274), which was claim for carrying the mails in the seceded States under the civil appropriation act of 1877 (19 Stat L., 362), the cases in which the jurisdiction of the court was assumed are reviewed. (Hukill's case, 18 C. Cls. R., 180; George's case, ib., 432; Wyatt's case, ib., 180; Chesapeake and Ohio Railroad Company, 20 ib., 49; and Nashville, Chattanooga and St. Louis Railway, ib., 526. The latter case was affirmed by the Supreme Court, 113 U. S., 261.)
The counsel for the defendants insist' upon a strict and literal construction of the statute as showing that the former *533 policy of adjustment was to be followed in the settlement of the claim of the petitioner, and calls the attention of the court to the case of Jaegar v. The United States (27 C. Cls. R., 278), Dewey v. The United States (178 U. S. R., 510), Same v. Same (35 C. Cls. R., 178), and Orr v. The United States (37 C. Cls. R., 292).
In the Orr case it was held that the act did not embrace the claim for which the claimant sued; that the object and purpose of the statute was to pay an emolument which accrued, during the time between the dates of rank and muster, and that therefore a claim which accrued before that time could not be recovered upon a showing- that a mistake had been made in the adjustment of a former account.
In the case of Foster v. The United States it is held:
“Where Congress creates a class of claims such as for horses and vessels lost or destroyed in the military service, and refer the claims for investigation and settlement to the accounting officers of the Treasury, no jurisdiction to finally determine a legal right is created, and the accounting officers act simply in their usual capacity of auditing officers and this court has jurisdiction of the claims.”
To sustain that view of the law many cases are cited.
Upon this review of the authorities it results, that where an appropriation is made for the payment of particular claims which may be settled by the accounting officers of the Treasury, but no exclusive jurisdiction is given to such officers to determine the right, to recover upon the part of a claimant of such fund, the Court of Claims has jurisdiction to hear and. determine the legal and equitable rights of any and all persons making claims to any of the appropriation.
The statute creates the right, and that right may be asserted in this court without reference to what may be done or omitted to be done in the Treasury Department unless the court is deprived of jurisdiction by making that Department the exclusive forum for its settlement. The appropriátion act is a direction to the accounting officers to pay what may be due, but a failure to pay does not deprive the claimant of the right to maintain a suit in this court to recover whatever.' may be due.
Before the acts upon which the claimant founds her right of recovery the statute of limitations prevented the claimant *534 from maintaining a suit in this court; but the statute, by a recognition of the right to recover whatever might be due the estate of the decedent, removed the limitation and revived the obligation of the defendants to pay for the services rendered as alleged in the petition.
In the case of Collins v. The United States (15 C. Cls. R., 22) there is a most able review of the authority of the accounting officers and the jurisdiction and power of this court. The result of such discussion is aptty stated in the syllabus of the decision, as follows: The provisions of the Constitution (Art. I, sec. 9, cl. 7) that ‘4 no"money shall be drawn,from the Treasury but in consequence of appropriations made by law ” is exclusively a direction to officers of the Treasury. It neither controls courts nor prohibits the creation of legal liabilities.
Congress in the passage of the appropriation act on which claimant founds her claim, recognized the right of the decedent to pay if he had not been paid (as he was not bjT the admissions of the demurrer), and that right being founded on an act of Congress makes consummate in his personal representative a right to whatever may have been due him; that right being existent under the statute, the jurisdiction of this court is open in order that there may be a judicial investigation and .determination of the question as to whether there was anything due the decedent at the time of his death for services rendered during the civil war. The purpose of the law was to ascertain in the best mode known to the law as to what was the state of account between the decedent and the United States, and upon that finding to do justice in the payment of whatever balance might be found due decedent or his personal representatives.
For these reasons the demurrer is overruled and leave given defendants to plead if they desire to do so.