Peelle, J.,
delivered the opinion of the court:
Judgment was rendered in this case November 1, 1904, for $150 for one month’s extra pay, but in respect to the claim for pay as captain Company K, First Vermont Volunteer In- *167 fantrjq from May 9, the date of his enrollment, to May 16, 1900, the date of his muster-in into the service of the United States, the petition was dismissed for the reason that the claimant had been paid for that period by the State of Vermont, which latter had been reimbursed by the United States pursuant to the act of July 8, 1898 (30 Stat. L., 780).
The question now arises on the claimant’s motion for a new trial, assigning as error the dismissal of his petition in respect to his claim for that period.
By the acts May 26, 1898 (30 Stat. L., 420), and the amendatory act July 7, 1898 (30 Stat. L., 721), it is declared that the pay and allowances of the officers and enlisted men of the volunteers received into the service of the United States “ shall be deemed to commence from the day on which they had their names enrolled for service in the Volunteer Army of the United States and j oined for duty therein after having been called for by the governor.on the authority of the President, and all officers and enlisted'men who have not been so paid shall be so paid by the Pay Department of the Army out of any moneys appropriated for the maintenance of the Army.”
By virtue of those statutes the officers and enlisted men of the Volunteer Army of the United States are entitled to be paid “ from the day on which they had their names enrolled ” for service therein. As the claimant was on May 9, 1898, enrolled under a call from the governor by virtue of the authority of the President, pursuant to the act April 22, 1898 (30 Stat. L., 361), and was not mustered into the service of the United States until May 16 following, he thereby became entitled to the pay of his grade for that period.
The claimant was paid for that period by the State of Vermont, and thereafter the State of Vermont was reimbursed under the act July 8, 1898 (30 Stat. L., 730), which provides:
“ That the Secretary of the Treasury be and he is hereby directed, out of any money in the Treasury not otherwise appropriated, to pay to the governor of any State or Territory, or to his duly authorized agent, the reasonable cost, charges, and expenses that have been incurred by him in *168 aiding the United States to raise the Volunteer Army in the existing war with Spain by subsisting, clothing, supplying, equipping, paying, and transporting men of his State or Territory who were afterwards accepted into the Volunteer Army of the United States.”
The question is, What effect shall the court give to the act under which the State of Vermont was reimbursed for the money paid to the claimant during the period for which he now seeks to recover ?
By section 1 of the act of April 22, 1898, supra, all able-bodied men, citizens of the United States, and those of foreign birth who have declared their intention to become citizens, between the ages of 18 and 45 years, are “ declared to constitute the national forces,” and unless excepted by law “ shall be liable to perform military duty in the service of the United States.” And section- 5 of the same act authorizes the President, when necessary to raise a volunteer army, to “ issue his proclamation, stating the number of men desired ” and how they shall be apportioned among the States and Territories and the District of Columbia.
Pursuant to that act the President, on April 23, 1898, issued his proclamation (80 Stat. L., 1770) calling for volunteers, to the number of 125,000, to carry into effect the purpose of the joint resolution of the Congress approved April 20, 1898 (30 Stat. L., 738), declaring, in effect, “that the people of the island of Cuba are, and of right ought to be, free and independent,” and demanding that the Government of Spain at once relinquish its authority and government in the island and withdraw its land and naval forces therefrom. The resolution empowered the President to use the “ entire land and naval forces of the United States and to call into the active service of the United States the militia of the several States to such extent as may be necessary to carry this resolution into effect.”
In the proclamation thus issued the President, pursuant to section 5 of the act of April 22, 1898, directed how the volunteers called into the service of the United States should be apportioned, leaving the details thereof to the War Department, and directing that the same be immediately communicated through that Department to the proper authorities in *169 the several States and Territories. Two daj^s thereafter (April 25) the Secretary of War communicated Avith the gOA^ernors of the several States and Territories, informing them of the number of men apportioned to their respective States and Territories, the number of men apportioned to the State of Vermont being “ one regiment of infantry.”
It Avas not until May 9 following that the claimant herein, in response to the proclamation of the governor of Vermont issued in compliance with the proclamation of the President, Avas enrolled and joined for duty, and when so enrolled it was not for service in the State, but for service in the Volunteer Army of the United States.
Section 2 of the act of April 22, 1898, provides “ that the organized and active land forces of the United States shall consist of the Army of the United States and of the militia of the seA^eral States AAdien called into the service of the United States.” And for the purpose of j>ay we think they may be deemed called into the service of the United States on the date of their authorized enrollment therefor.
This, we think, was clearly the intention of Congress by the act when volunteers AAAre called for by the President. But whatever doubt may have existed in that respect was remoAred bjr the act of May 26, 1898, and the amendatory act of July 7, 1898, supra, declaring in effect that the pay and alloAvances of the officers and enlisted men of the volunteers recerved into the service of the United States “ shall be deemed to commence from the dajr on which they had their names enrolled for serAÚce in the Volunteer Army of the United States and joined for duty therein.”
Hence, we reach the conclusion that the United States were liable to the claimant and others likewise called into the service of the United States from the date of their enrollment and joining for duty in the service of the United States. This being so, when the State of Vermont, through her governor, paid the claimant for the period from the date of his enrollment to the date of his muster in, she was acting as the agent of the United States; and whether the act of the governor Avas authorized by the United States or Avas in excess of their authority is immaterial, since by the act of July 8, 1898, supra, payment made by the governor in aid of *170 the United States in raising the Volunteer Army was ratified and the Secretary of the Treasury was authorized to pay the governor.the reasonable charges and expenses that were incurred by him in aiding the United States to raise the Volunteer Army by, among other things, paying the men of his State who were afterwards accepted into the Volunteer Army of the United States. • '
Pursuant to that act the State of Vermont was paid for the services of the claimant from the date of his enrollment to the date of his muster into the service of the United States and thereby the liability of the United States to the claimant for said period was extinguished.
It matters not whether the claimant was paid by the State, before or after the passage of the reimbursement act, as the liability from its inception was that of the United States and not of the State, and the claimant having been paid for that period by the United States through the agency of the State, he is not entitled to further compensation therefor.
By the amendatory act of July 7, 1898, supra, it is provided that “All officers and enlisted men who have not been so paid (that is, from date of enrollment) shall be so paid by the Pay Department of the Army out of any moneys appropriated for the maintenance of the Army.”
It would certainly not be contended that if payment had first been made to the claimant by the Pay Department of the Army from the date of his enrollment he could thereafter have asserted a claim against the State. The policy of the law, as well as the law itself, is against such double payments. This ruling necessitates the overruling of the claimant’s motion for a new trial, which is accordingly done.