Peelle, J.,
delivered the opinion of the court.
The principal question in this case is, Are the United States, after having reimbursed the State of Ohio under the reimbursement act of July 8, 1898 (30 Stat. L., 730), for a payment made by it to the claimant for service from the date of his enrollment to the date of his muster into the Volunteer Army of the United States, liable under the act of May 26, 1898, and the amendatory act thereto of July 7, 1898 (30 Stat. L., 420 and 721), to the claimant for his service during the same period ?
This question was considered by the court in the case of Burnham v. United States (ante, p. —), and in. construing the several acts of Congress therein referred to, including those mentioned above, the court reached the conclusion that whether the claimant was paid by the State before or after the passage of the reimbursement act was immaterial, “ as the liability- from its inception was that of the United States and not of the State, and the claimant having been paid for •that period by the United States through the agency of the State he is not entitled to further compensation therefor.”
This conclusion we reached on the theory that whether the governor, in the payment to the claimant for his services from date of enrollment to date of muster in, was^ acting in *393 excess of or without authority from the United States, his act was thereafter ratified by the reimbursement act of July 8, 1898, supra, and that when so ratified such ratification related back to the time of the act or payment, by the governor.
Tie are unable to see any error in the conclusion we then reached in the construction of the statutes considered. But in the present case the claimant’s counsel calls our attention to two other acts of Congress which were not considered in that case. They are the acts of March 3,1899 (30 Stat. L., 1356), and the act of April 27, 1904 (33 Stat. L., 312), both being amendatory of the reimbursement act of July 8, 1898, supra.
The purpose of the act of March 3, 1899, as appears from its language, was (1) to authorize the Secretary of the Treasury to allow to the governors in his settlement with them for expenses incurred in aiding the United States in raising volunteers after, as well as before, the act of July 8, 1898; (2) that the pay and allowance to officers and men of the National Guard or militia for services rendered by them should not exceed the pay and allowance authorized by the laws of the' respective States or Territories, and only then to those who appeared and remained at the place of muster and were afterwards received into the service of the United States; (3) that where there were no laws fixing the pay, the officers should be allowed the same pay, as that allowed to officers of the Regular Army and to enlisted men $1 per day during the period from the date of enrollment to the date of muster into the Volunteer Army of the United States or to the date of their rejection by the medical examiner ; (4) that where such officers and men had not been paid in Avhole or in part the pay allowed them by the act, they should be paid by the States and Territories direct, i. e., “ where no laws exist for the payment of the officers and men of the National Guard or militia or naval reserves ” there shall be paid to them direct the rates fixed in said act.
The purpose of the act of April 27, 1904, supra, appears to be (1) to extend the time within which claims for expenses incurred in raising volunteers may be filed to January 1, *394 1906, and requiring such claims to be presented in itemized form to the Treasury Department within the time stated; (2) to authorize the reconsideration and allowance by the accounting officers of certain items of accounts theretofore certified by the governors and filed, which had been disallowed for the reason that they were for expenses incurred after the troops had been mustered into the service of the United States.
In the Burnham case the claimant had been paid by the State of Vermont for the period from the date of his enrollment to the date of muster, and notwithstanding the State had been reimbursed therefor by the United States, he sought to recover pay from the United States for the same period.
In the present case-the claimant has been ¡laid both by the State of Ohio and the United States from the date of his enrollment to the date of his muster into the Volunteer Army of the United States; and the State of Ohio has been reimbursed by the United States; and such double payments we are now advised have been made, with the approval of the Comptroller of the Treasury, to most of the officers and enlisted men who served during the recent war with Spain. The decision under which such double payments have been made was rendered January It, 1899 (5 Comp. Dec., 381), reversing a former decision holding the contrary (5 Comp. Dec., 130). In his overruling decision the Comptroller said:
“ On more mature deliberation I am of the opinion that I was wrong in such holding. No deduction should be made by the Pay Department from the pay that would be due a soldier under the act of July t, 1898 (30 Stat. L., 121), on account of any payment that may have been made under the State militia law to him by the governor or State authorities from the date of his enrollment or joining for duty to the date of his acceptance into the Volunteer Army of the United States.
_ “ The governor or State authorities make this payment to him as a State soldier, and because Congress has seen fit, by the act of July 8, 1898 (30 Stat. L., 130), to reimburse the governor or State for these payments is no sufficient reason for the Government, by indirection, to take away from the soldier what had been paid him by a State, and no sufficient *395 reason why the act of July 7, 1898 (30 Stat. L., 721), should be evaded.
“ Hence I hold that no stoppage or deduction should be made from a soldier’s pay on account of any payments made to him by the governor of a State or State authorities as a militiaman before his acceptance into the Volunteer Army of the United States, and said decision is modified as herein set forth.”
That ruling,, it will be noted, is based on the theory that from the date of enrollment to the date of muster into the Volunteer Army of the United States the soldier was in the militia service of the State and that payment was made to him by the governor “ as a State soldier,’! and that being so the act of July 7,1898, was not intended to take from him what the State had so paid him. Hence the Comptroller „ ruled that there should be no stoppage or deduction therefor from the pay clue such soldier from the United States for the same period.
In support of the ruling of the Comptroller, our attention is called to the proceedings in Congress and the reports of the several committees having charge of the bills which finally became the acts of March 3,1899, and April 27,1904, supra, showing in effect that at the time of the passage of the acts of 1899 the Congress were advised of the ruling of the Comptroller allowing payment by the United States, notwithstanding payment had been made for the same period by the several States, and that with that knowledge the Congress provided by the act of March 3, 1899 :
“ That in all States and Territories where no law exist for the payment of the officers and men of the national guard, or militia, or naval reserves, there shall be allowed to saicl States and Territories or the governors of said States and Territories, for the officers the same pay as allowed officers in the Regular Army holding the same rank, and for the men, one dollar per day, for such officers and men as • appeared, and remained at the place of muster and were afterwards received into the service of the United States for the period between the date of assembly at the rendezvous and the date they were mustered into the service of the United States.”
And in the last proviso to that act it Avas in substance provided that where States and Territories had not paid the *396 amounts to tlio officers and men, or any part thereof, the pay allowed them by the act should be paid by the States and Territoi’ies direct to the officers and men, and that no money allowed by the act for such officers and men should be covered into the treasury of the States or Territories. Such payments, the claimant contends, should be made to the States for such officers and men, notwithstanding they had theretofore been paid by the United States through the Pay Department of the Army, as provided by the act of July 7, 1898, supra, and it must be conceded that such was the ruling of the Comptroller of which the Congress were advised before thejr passed the act of March 8, 1899; and there is no express language in that act nor in the act of April 27, 1904, which can be construed adversely to that ruling, while the claimant contends that the act of March 3, 1899, is an ex-n press acceptance by the Congress of the system of double payments by the States and by the United States, and that the act of April 27, 1904, was a ratification of the act of 1899, as construed by the Comptroller with a full knowledge by the Congress of his decision.
However, if it were not for the decision of the Comptroller and the action thereunder in the settlement of a large majority Of the claims of officers and enlisted men in the late Spanish war, we should incline to adhere to our decision in the Burnham cáse; but if the ruling in the Burnham case should stand it would result in inequality to the officers and men who served faithfully in the late Spanish war, and for that reason we are inclined to give the claimant the benefit of the doubt arising under the statutes as construed by the Comptroller, and therefore disallow the counterclaim of $117.98 paid him by the United States for the period from the date of his enrollment to the date of his muster into the Volunteer Army of the United States. This conclusion entitles the claimant to recover without deduction for the one month’s extra pay claimed by him under the Magurn case (ante, —), as set forth in the findings, amounting to the sum of $208.33, for which judgment is ordered entered. The petition as to the counterclaim is dismissed.