Peemjd, Ch. J.,
delivered the opinion of the court:
The claimant was commissioned October 15, 1861, by- the governor of Kentucky as second lieutenant Company A, Twenty-fifth Begiment Kentucky Volunteer Infantry, to take rank from said date, and he performed the duties of that grade, but was not mustered into the service of the United • States until November 13, 1861. For his service from October 15 to November 15, 1861, he was paid by said State $105.50, for which the State was reimbursed by the United States under the act of July 27, 1861 (12 Stat. L., 276).
. The claimant by his action seeks to recover for the same period a like sum from the United States. The jurisdiction of the court is invoked under the act of February 24, 1897 (29 Stat. L., 593), as construed by this court in the cases of *440 Orr, (37 C. Cls. R., 292), Sowle (38 id., 525), and Galm (39 id., 55).
By the act of' July 24, 1861 (12 Stat. L., 274), being “An act for the relief of the Ohio and other volunteers ” whose term of service, it had been decided by the War Department, did not begin until sworn into the service of the United States some days after their organization, it was provided “ That the proper disbursing officer compute and pay to the said volunteers compensation from the day of their organization and acceptance as companies by the governor of the State of Ohio, as aforesaid, until the expiration of their term of service; ” and further, that where the militia of other States were similarly situated the War Department should pay them .according to the provisions of said act.
Thereafter, by the act of July'27,1861 (supra), it was provided :
, “ That the Secretary of the Treasury be, and he is hereby, directed, out of .any money in the Treasury not otherwise appropriated, to pay to the governor of any State, or to his duly authorized agents, the costs, charges, and expenses properly incurred by such State for enrolling, subsisting, clothing, supplying, arming, equipping, paying, and transporting its troops employed in aiding to suppress the present insurrection against the United States, to be settled upon proper vouchers, to be filed and passed upon by the proper accounting officers of the Treasury.”
Thereafter, by the act of August 6, 1861 (12 Stat. L., 326), fixing the pay of privates in the regular and volunteer armies and validating the proclamations and orders of the President after the 4th day' of March, 1861, the relief granted to the Ohio volunteers was by section 2 of the act extended “ to all volunteers mustered into the service of the United States, whether for one, two, or three years, and for and during the war.” Pursuant to those acts our information is that the United States, except in the case of Kentucky, paid direct to the volunteers so called into the service, from • the date of “ their organization and acceptance as companies by the governor ” of their respective States. In respect to the State of Kentucky, the claimant contends that notwithstanding he was paid by said State, and the United States subsequently *441 reimbursed the State therefor, he is entitled to recover a like sum for the same period from the United States. That is to say, he claims double payment on the theory that when paid by the State he was serving in the State militia,-and that reimbursement by the United States did not operate to liquidate further liability of the United States. In other words, his contention is that inasmuch as under the act of- July 8, 1898 (80 Stat. L., 730), the soldiers in the Spanish war-were paid by the United States notwithstanding they- had been paid a like sum for the same period by.the respective States, and such States had been reimbursed therefor, he is. entitled to be likewise paid.
This question respecting the soldiers’ service in the Spanish war was before the court in the Burnham case (40 C. Cls. R., 166). Prior to the passage of the reimbursement act of July 8,1898, Congress had by the acts of May 26 and July 7, 1898 (30 Stat. L., 420 and 721), provided that the pay and allowances of officers and enlisted men of the volunteer's received into the service of the United States should “ commence from the day on which .they, had their names enrolled for service in the Volunteer Army, of the United States and joined for duty therein, after having been called for by the governor, on the authority of the President; ” and, further, that ■ “ all officers and enlisted men who have been so paid shall be so paid by the Pay Department of the Army out of any moneys appropriated for the maintenance of the Army.”
It was, therefore, held in that case that such officers and enlisted men were entitled to be paid by the United States “ from the day on which they had their names enrolled ” for service, but that if they had been so paid by their respective States, and such States had been reimbursed, that' extinguished any further liability of the United States.
The conclusion we .reached in that, cáse we think applies with more force in the present case for ’the reason that here the claimant has, aside from the reimbursement act, only the provision of the act of July 24, 1861, supra (extended by the act of Aug. 6, supra), providing payment “ from the date of their organization and acceptance as companies ” by their respective governors,, while by the acts of May 26 and July *442 7, 1898, supra, the pay and allowances of officers and enlisted men it is declared shall “ commence from the day on which they had their names enrolled for service in the Volunteer Army of the United States and joined for duty therein after having been called for by the governor on the authority of the. President; ” and upon that basis'the Pay Department of the Army was authorized to pay them.
That language is more definite than the language in the acts of 1861, and yet the court in the Burnham case held that the claimant therein was not entitled to recover.
Later, when the same question was before the court in the Hovey case (40 C. Cls. R., 390), the court, in commenting on the holding in the Burnham case, said: “We are unable to see any error in the conclusion we then reached in the construction of the statutes considered.” In that case, however, our attention was called to the ruling of the Comptroller, with respect to which the court said:
“ However, if it were not for the decision of the Comptroller and the action thereunder in the settlement of a large majority of the claims of officers and enlisted men in the late Spanish war, we should incline to adhere to our decision in the Burnham case; but if the ruling in the Burnham case should stand it would result in inequality to the officers and men who served faithfully in the late Spanish Avar, and for that reason .Ave are inclined to give the claimant the benefit of the doubt arising under the statutes as construed by the Comptroller.”
It will thus be noted that the decision in the Eovey case rested entirely upon the decision of the Comptroller, who, under the various statutes referred to in that case, had settled a large majority of the claims of officers and enlisted men who served in »the Spanish war.. In the present case the action of the accounting officers is wanting in respect to such double payments under the acts of 1861. It is shoAvn that since the war of the rebellion the uniform practice of the accounting officers in the settlement of the claims of officers and men who served in that Avar has been to deny claims for pay and alloAvances Avhere such officers and men had already been paid by their respective States, and such States had been reimbursed therefor by the United States; and in case of *443 such, double payment deductions on account thereof have been uniformly made in the settlement of the accounts of "such officers and men. In view of such uniform practice and in the absence of any specific statute authorizing such double payment, we are constrained to hold that the Burnham case applies.
Petition dismissed.