## MEDBURY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

*No. 225. Argued March 17, 1899. — Decided April 3, 1899.*

Under the act of June 16, 1880, c. 244, the Court of Claims has jurisdiction of an action to recover an excess of payment for lands within the limits of a railroad grant, which grant was, after the payment, forfeited by act of Congress for nonconstruction of the road.

When in such case, by reason of the negligence of the railroad company for many years to construct its road, Congress enacts a forfeiture of the grant, the Government is under no obligation to repay the excess of price paid by the purchaser of such lands in consequence of their being within the limits of the forfeited grant.

THE appellant herein filed her petition in the Court of Claims and sought to recover judgment by virtue of the provisions of the act approved June 16, 1880, c. 244, 21 Stat. 287.

The Attorney General denied all the allegations of the petition, and the case was tried by the court upon the following agreed statement of facts: Congress made a grant of lands to the Wisconsin Central Railroad Company by the act of May 5, 1864, c. 80, 13 Stat. 66, which contained the condition that the railroad should be built as therein provided. After the grant the price of the lands reserved within its place limits was raised from $1.25 per acre to $2.50 per acre under the authority of law and by the direction of the Secretary of the Interior. In 1872, one Samuel Medbury made an entry of more than seven thousand acres of land, within the place limits of that grant and at the double minimum price of $2.50

per acre, and he died in 1874, leaving his widow, tne appellant herein, and a son and daughter, who subsequently conveyed to the appellant all their interest in the claim herein made.

The conditions upon which the grant of lands was made to that particular section of the proposed railroad were never complied with and the proposed railroad was never constructed, for which reason the grant was by the act of Congress of September 29, 1890, c. 1040, 26 Stat. 496, forfeited to the United States. By reason of this failure to build the railroad, and because of the forfeiture of the land grant by Congress, the lands purchased by Medbury ceased to be alternate sections of land within a railroad land grant, although they were such when he purchased them. Thereafter, and on the 14th of November, 1894, Lucetta R. Medbury, as the widow and heir of Samuel Medbury, made application to the Secretary of the Interior for the repayment of the excess of $1.25 per acre upon the seven thousand and odd acres of land entered by her husband, the application being made under the second section of the act of June 16, 1880, c. 244, 21 Stat. 287, and on October 5, 1897, the application was denied by the Secretary. Upon these findings of fact the Court of Claims decided, as a conclusion of law, that the petition should be dismissed for want of jurisdiction. From that decision the claimant has appealed to this court.

Mr. *Russell Duane* and Mr. *Harvey Spalding* for appellant. Mr. *E. W. Spalding* was on the brief.

Mr. *George Hines Gorman* for appellees. Mr. *Assistant Attorney General Pradt* was on his brief.

MR. JUSTICE PECKHAM, after stating the facts, delivered the opinion of the court.

Two questions arise in this case: (1) Whether the Court of Claims had jurisdiction of the claim; and (2) if it had, what is the true construction of the act of June 16, 1880, requiring the repayment to the purchaser, of the excess of $1.25 per acre

where the land purchased has afterwards been found not to be within the limits of a railroad land grant.

The ground upon which the learned Court of Claims decided that it had no jurisdiction in the case was that the remedy afforded by the act of 1880 to obtain the repayment of the excess of the price was exclusive of any other. Thus if the Secretary of the Interior erroneously construed the act and refused payment in a case where the claimant was justly entitled thereto, under its provisions, the claimant would be without redress, even though there were no dispute in regard to the facts, and the decision of the Secretary was a plain mistake in regard to the law. In this construction as to the jurisdiction of the Court of Claims, we are unable to agree.

The first section of the act of June 16, 1880, does not refer to such a case as this. Section 2 of that act reads in full as follows:

"In all cases where homestead or timber culture or desert land entries or other entries of public lands have heretofore or shall hereafter be cancelled for conflict, or where, from any cause, the entry has been erroneously allowed and cannot be confirmed, the Secretary of the Interior shall cause to be repaid to the person who made such entry, or to his heirs or assigns, the fees and commissions, amount of purchase money and excesses paid upon the same, upon the surrender of the duplicate receipt and the execution of a proper relinquishment of all claims to said land, whenever such entry shall have been duly cancelled by the Commissioner of the General Land Office, *and in all cases where parties have paid double minimum price for land which has afterwards been found not to be within the limits of a railroad land grant, the excess of one dollar and twenty-five cents per acre shall in like manner be repaid to the purchaser thereof, or to his heirs or assigns.*"

Section 3 authorizes the Secretary of the Interior to make the payments provided for in the act out of any money in the Treasury not otherwise appropriated, and by section 4 the Secretary is authorized to draw his warrant on the Treasury in order to carry the provisions of the act into effect.

The portion of section 2, which is in italics, is the part of the act upon which this claim is founded. The question is whether the Court of Claims has jurisdiction in this case upon the facts found.

By the act of March 3, 1887, c. 359, 24 Stat. 505, the Court of Claims is given jurisdiction to hear and determine, among other things, all claims founded upon any law of Congress. As the claim in this case is founded upon the law of Congress of 1880, it would seem that under this grant of jurisdiction the Court of Claims had power to hear and determine the claim in question. The act of 1887 was not, however, the first act giving jurisdiction to the Court of Claims in regard to a law of Congress. It had the same power when the case of *Nichols* v. *United States*, 7 Wall. 122, was decided, and a question of jurisdiction arose in that case. It there appeared that Nichols & Company were merchants in New York, and they made in 1847 an importation from abroad upon which duties were imposed on the quantity invoiced. The importation consisted of casks of liquor, and a portion of the liquor had leaked out during the voyage, and was thus lost, and consequently was never imported in fact into the United States. Notwithstanding these circumstances Nichols & Company paid the duties as imposed under the invoice, and without any deduction for leakage, and made no protest in the matter. An act of Congress of February 26, 1845, provided that no action should be maintained against any collector to recover duties paid unless a protest had been made in writing and signed by the claimant at the time of the payment. Where a protest had been made the importer could thereafter bring a suit against the collector for a recovery of the money so paid, and the suit would be tried in due course of law. The importers having made no protest, and being therefore unable under the provisions of the law to bring suit against the collector, brought suit in the Court of Claims to recover back the overpayment, upon the ground that the court had power to hear and determine all claims founded upon any law of Congress, or upon any regulation of the executive department, or upon any contract, express or implied, with the Government of the

United States. This court held that the Court of Claims had no jurisdiction, and in the course of the opinion of the court, which was delivered by Mr. Justice Davis, and in giving the grounds upon which the court denied jurisdiction, it was said:

"Congress has from time to time passed laws on the subject of the revenue, which not only provide for the manner of its collection, but also point out a way in which errors can be corrected. These laws constitute a system which Congress has provided for the benefit of those persons who complain of illegal assessments of taxes and illegal exactions of duties. In the administration of the tariff laws, as we have seen, the Secretary of the Treasury decides what is due on a specific importation of goods, but if the importer is dissatisfied with this decision, he can contest the question in a suit against the collector, if, before he pays the duties, he tells the officers of the law, in writing, why he objects to their payment."

And again the court said:

"Can it be supposed that Congress, after having carefully constructed a revenue system, with ample provisions to redress wrong, intended to give to the taxpayer and importer a further and different remedy? The mischiefs that would result, if the aggrieved party could disregard the provisions in the system designed expressly for his security and benefit, and sue at any time in the Court of Claims, forbid the idea that Congress intended to allow any other modes to redress a supposed wrong in the operation of the revenue laws, than such as are particularly given by those laws."

The system spoken of in the opinion provided a general scheme for the collection of the revenue, and also provided adequate means for the correction of errors by a resort to a suit in a court of law prosecuted in the ordinary way. While it gave rights, it provided a special but full and ample remedy for their infringement. It certainly could never be presumed that Congress, while thus furnishing an adequate method for the correction of errors, intended that the party aggrieved might refuse to follow such remedy and resort to some other and different mode of relief. It is quite plain that the remedy thus specially indicated was exclusive, and that the act giving

jurisdiction to the Court of Claims had no application. The principle asserted in the case cited has no application to this case.

Although the right to recover back the excess of payment in this proceeding is based upon the statute of 1880, we do not think it comes within the principle of those cases which hold that where a liability and a remedy are created by the same statute, the remedy thus provided is special and exclusive. In this case it is not a right and a remedy created by the same statute. The statute creates the right to have repayment under the facts therein stated, but it gives no remedy for a refusal on the part of the Secretary to comply with its provisions. The person has the right under the act to obtain a warrant from the Secretary of the Interior for the repayment of the excess therein mentioned, and for the purpose of obtaining it he must make his application and prove the facts which the statute provides, and then the Secretary is to draw his warrant on the Treasury. This constitutes the right of the appellant. Applying for the warrant is not a remedy. When application for repayment is made there is nothing to remedy. He has not been wronged. A right of repayment of money theretofore paid has been given by the act, but it is only under the act that the right exists, and that right is to have the Secretary in a proper case issue his warrant in payment of the claim, and until he refuses to do so, no wrong is done and no case for a remedy is presented. After the refusal, the question then arises as to the remedy, and you look in vain for any in the act itself. We cannot suppose that Congress intended in such case to make the decision of the Secretary final when it was made on undisputed facts. If not, then there is a remedy in the Court of Claims, for none is given in the act which creates the right. The procedure for obtaining the repayment as provided for in the act must be followed, and when the application is erroneously refused, the party wronged has his remedy, but that remedy is not furnished by the same statute which gives him the right.

If there were any disputed questions of fact before the Secretary his decision in regard to those matters would probably

be conclusive, and would not be reviewed in any court. But where, as in this case, there is no disputed question of fact, and the decision turns exclusively upon the proper construction of the act of Congress, the decision of the Secretary refusing to make the payment is not final, and the Court of Claims has jurisdiction of such a case.

We have been referred to no case in this court which holds views contrary to those herein presented. We do not mean by this decision to overrule or to throw doubt upon the general principle that where a special right is given by statute, and in that statute a special remedy for its violation is provided, that in such case the statutory remedy is the only one, but we hold that such principle has no application to this particular statute, because the statute does not, in our judgment, within the meaning of the principle mentioned, furnish a remedy for a refusal to grant the right given by the statute.

This case bears more resemblance to *United States* v. *Kaufman*, 96 U. S. 567, and *United States* v. *Savings Bank*, 104 U. S. 728, than it does to *Nichols* v. *United States*, 7 Wall. 122.

In *United States* v. *American Tobacco Company*, 166 U. S. 468, the statute permitted the holder of stamps which he had paid for and not used, and which were spoiled or destroyed, etc., to apply to the Commissioner of Internal Revenue to redeem or make allowance for such stamps. Application was so made, but the Commissioner refused to redeem or make the allowance because of other facts stated in the case. The applicant filed his petition in the Court of Claims, and that court gave him judgment which was here affirmed. It is true that no question of jurisdiction was raised, but if the case at bar was properly decided by the court below, the court in that case had no jurisdiction, because the right to obtain redemption or payment was given by the same statute which provided the procedure to secure it, and the so-called remedy would have been exclusive in that case, as it is held to be exclusive in this. The party had to apply to the Commissioner and to comply with regulations, etc., all of which was but a part of the right which was granted, and when the Commissioner

erroneously refused to make the redemption as provided for by the statute, the claimant, founding his claim upon a law of Congress, pursued his only remedy in the Court of Claims, and obtained it without any question of jurisdiction. We think the court had jurisdiction in that case, and that it also existed in this.

We come now to the question as to the true construction of the act itself, and whether it is applicable to the facts in this case.

It is conceded by the appellant that at the time the entry was made and the double minimum price paid for the lands, they were within the place limits of the grant to the Wisconsin Central Railroad. The payment therefore was a proper payment, and necessary to have been made in order to obtain the lands. There was no mistake or misunderstanding of the facts at the time the entry was made. It was made eight years after the passage of the land grant by Congress, March 5, 1864, and at the time the payment was made the railroad had not been built. The Government of course was no guarantor that the railroad ever would be built, and the party thus making an entry of lands within the place limits of a railroad grant necessarily took his chances of the future building of the road. That it was not certain to be built was sufficiently apparent at the time of the entry, for eight years had then elapsed, and no road had been built at that time. It was not until eighteen years after the entry, viz., in 1890, that the Government finally forfeited the lands because of the failure of the company to build the road. With reference to these facts, we think that the construction placed upon the act of 1880 by the Secretary of the Interior is the correct one.

The Secretary decided that the act does not apply to a case such as this, where at the time of the entry the lands were within the limits of the railroad land grant, and so continued for eighteen years, and where it was only by the failure of the railroad company to build the road and the forfeiture of the land grant by the Government consequent upon such failure that the land then ceased to be within such limits.

Whatever may have been the reason of Congress in making

the charge of $2.50 per acre the minimum price for alternate sections along the line of railroads within the place limits of the grant, the meaning of the act of 1880 is not in anywise affected thereby. That act plainly referred to the case of a mistake in location at the time when the entry was made. Where the parties supposed that the land entered was within the limits of the land grant, and where subsequently it is discovered that the lands were not within those limits, that a mistake had been made, and that the party had not obtained the lands which he thought he was obtaining by virtue of his entry, then the act of 1880 applies.

Here no mistake whatever has been made. The lands were within the limits of the land grant at the time of the entry, and so remained for many years and up to the time of the act of forfeiture by Congress. Whether the railroad would fulfil its obligations and in good time build its road through the land grant was a matter which the future alone could determine, was a matter which the entryman could judge of as well as the Government, and was a matter in regard to which the Government gave no guaranty, express or implied. Hence, when in subsequent years the company failed to build its railroad within the limits of the land grant at this point, and the same was forfeited, the Government was under no obligations whatever by virtue of the act of 1880 or otherwise to repay the difference in price for these lands.

While we agree with the Court of Claims in the dismissal of the petition, it is for a different reason. The petition should have been dismissed upon the merits, but we do not think it necessary to reverse the judgment on that account, as we can modify it so that it shall provide for dismissing the petition on that ground.

*Judgment modified, and as modified affirmed.*