WeldoN, J.,
delivered the opinion of the court:
The claimant brought suit for an alleged overpayment to the United States for public land situated in the State of Oregon. On the 3d day of September, 1888, he made cash entry No. 3268 at the land office at Logrande, Oreg., covering the northwest quarter of section 14, town 2 southeast, 27 east, paying for the same $400, being at the rate of $2.50 per acre. At the time of the purchase, entry, and payment it does not appear that the claimant made protest or objection as to the price charged for said land; that the same was paid and received in the belief that said land was within tbe grant of the Northern Pacific Railroad Company, under the act of July 2,1864 (13 Stat. L., 365), and that therefore the price of said land was properly charged at $2.50 per acre.
No complaint wras made as to the price until July 2, 1897, when the claimant made application to the General Land Office for repayment of the excess over single minimum price under the provisions of the act of June 16, 1880 (21 Stat. L., 287). The application having been rejected by the Commissioner of the General Land Office, an appeal was taken from his decision to the Secretary of the Interior, who, on October 5,1897, affirmed the decision of the Commissioner. The Secretaiy said:
“From a review of the matter I am already of the opinion that the location was made with respect to the river without regard to its actual location by section, township, or range, and that the location of the river,, however shown, would govern the intended general route of the road. This being so, the entire line was located within the Territory of Washington, and it wus proper to establish a 40-mile limit thereon.”
The Secretary further adds:
“As above stated, that Elliott made his purchase September 5, 1888, at which time the land was property rated at $2.50 per acre, and there is no authority under the law for granting an application for the return of the double minimum excess. The application is accordingly denied.”
*138 There was much controversy in the argument of the case as to whether this land lay within the limit of the road as established by the map filed by the company under and in pursuance of the act of July 2,1864 (sw£>ra), making the grant to the Northern Pacific Company.
At the time entry was made the claimant was of the belief and impression that the land fell within the limit prescribed by the location of the road under said act, and the agents and officers of the United States were equally of the impression and belief that it did fall legitimately within the boundaries of the grant of the road, and that the proper and legal price of the land was $2.50 per acre, and therefore the claimant paid and the defendants received the money, upon that theoiy of the law.
The contention of the claimant arises out of the allegations on his part that by the location of the road according to the requirements of a map filed by the company a portion of the road would lie within the State of Oregon, and that the land which was purchased, lying as it did opposite to so much of the road as was built in Oregon, would be outside of a limit of 10 miles from the track of the road, and therefore not subject to the increased price of $2.50 per acre.
It is said by the Secretarj of the Interior:
“According to the map of general route filed by said company, August 13, 1870, the line of road between the points above named followed the Columbia River along the north bank, and as said river formed the boundary line between the th'en Territory of Washington and the State of Oregon, the entire location appeared to be within the Territory of Washington, and for that reason the withdrawal ivas made upon said map for 40 miles in width on each side thereof. It appears, however, that upon said map of general route the Columbia River was incorrectty located; so that if the river be changed and properly represented, and the line of location remain without regard to its relative position to said river, the line of road as located would, in several places, cross the river and for a short distance be within the State of Oregon. * * *
“From a review of the matter I am already of the opinion that the location was made with respect to the river and without regard to its actual location by section, township, or range, and that the location of the river, however shown, would cover the intended general route of the road. This being so, the *139 entire line was located within the Territory of Washington and it was proper to establish the 40-mile limit thereon.”
Without going into a discussion of the details as to whether the land was in a 40-mile limit or a 20-mile limit, it is sufficient for the purposes of this case to refer to the case of the United States v. Edmonston (181 U. S. R., 500), in which it is held, in substance, in the language of the syllabus:
“One who pays to Government officers entitled to receive money for public lands more than the law required him to pay for it, can not recover that excess in an action against the Government in the Court of Claims.”
After an examination into the facts of the case the court says:
“The act of June 16, 1880, may therefore be put out of consideration by the act of June 15. However, the price of this tract was reduced from §2.50 to §1.25 per acre. The claimant paid the §2.50 per acre without protest or question. He paid more than the law required him to pay. Can he recover the excess in this action in the Court of Claims?”
The Supreme Court, in the case of Edmonston (supra), after an examination and discussion of the many cases cited by counsel in behalf of the light of the plaintiff to recover, concluded:
“In short, and to sum up in a word, so far as we can see from this record the transaction was purely voluntary on his part, and that while there wavs a mistake, it was mutual and one of law' — a mistake on his part not induced by any attempt to deceive or misrepresentation by the Government officials. It is a case of voluntary payment, and as such the claimant’s remedy is by appeal to the discretion of Congress, and not by an action in the Court of Claims.”
Applying that law as announced in that case, can there be any right to recover? The suit in this proceeding is based upon the act of June 16, 1880 (21 Stat. L., 287).
The case of Edmonston was based upon the same statute, and the entry in that case at the price paid for the land was a mistake on the part of both parties as to the lawful price which the claimant as purchaser should have paid. Did not the same mistake occur in this case, conceding that the land was not lawfully within the grant to the railroad company ? It was a mutual mistake on the part of the seller and of the purchaser, a pure mistake of law.
*140 The court in the Edmonston case says, in substance, if the parties to the transaction wei’e private individuals it would clearly be a case of voluntary payment, and the mere overpayment would not be recoverable. The court refrained from aiy discussion of the mere equities of the transaction or the force of the moral obligation resting upon the Government to repay the excess beyond the legal price of the land. The court was of the opinion that their inquiry was limited to the question whether Congress had conferred upon the Court of Claims jurisdiction to redress an alleged grievance growing out of an excessive payment for property sold or services performed by officers of the United States. It- is said, in substance, if jurisdiction in such matters is once admitted, then every individual who has been charged excessive fees or prices may seek the jurisdiction of the Court of Claims for redress, and thereby open the door to interminable litigation.
It is said in the findings of the Secretary of the Interior that in his opinion the location was made with respect to the river and without regard to its actual location bjr section, township, or range, and that the location of the river would govern the general intended route of the road. And because of that fact so found by the Secretary, no part of the road was located within the State of Oregon, and that being true, it was proper to establish a 40-mile limit.
This was the limit at the time the claimant made his entry as indicated by the construction of the map filed by the company in 1870.
The contention of the claimant is that the map was erroneous, that the line drawn of the Columbia River was fictitious, and in conflict with the line of that river located by the public surveys; and that the records of the office of the Secretary of the Interior and of the Commissioner of the General Land Office by examination show such location to be erroneous, but that if the location stood as intended bj7' the line of the river, then the land is within the limits of the grant to the railroad company, and the price of the land was §2.50 per acre; but insists that the map being false and fictitious, the land purchased, by the claimant was never within the limits of the railroad grant, and therefore the charge of $2.50 per acre was unlawful.
*141 But even if it were not a mistake of law, is not the findings of the Secretary of the Interior of the fact that the land was within the 40-mile limit of the road, located in the Territory of Washington, binding on the rights of the claimant?
As is said in the case of Medbury v. The United States (173 U. S. R., 497), “if there were any disputed questions of fact before the Secretary, his decision in regard to those matters would probably be conclusive and would not be reviewed in any court.”
For the reasons above stated the claimant is without the right to recover and the petition is therefore dismissed.