Booth, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
This is a suit under section 2 of the act of March 26, 1908, 35 Stat. L., 48, for the repayment of an alleged excess charge exacted of the plaintiff at the time he made a preemption entry under the general land laws of the United States.
The act of 1908 provides as follows:
“ SectxoN 1. That where purchase moneys and commissions paid under any public-land law have been or shall hereafter be covered into the Treasury of the United States *295 under any application to make any filing, location, selection, entry, or proof, such purchase moneys and commissions shall be repaid to the person who made such application, entry, or proof, or to his legal representatives, in all cases where such application, entry, or proof has been or shall hereafter be rejected, and neither such applicant nor his legal representatives shall have been guilty of any fraud or attempted fraud in connection with such application.
“Sec. 2. That in all cases where it shall appear to the satisfaction of the Secretary of the Interior that any person has heretofore or shall hereafter make any payments to the United States under the public-land laws in excess of the amount he was lawfully required to pay under such laws, such excess shall be repaid to such person or to his legal representatives.
“ Sec. 3. That when the Commissioner of the General Land Office shall ascertain the amount of any excess moneys, purchase moneys, or commissions in any case where repayment is authorized by this statute, the Secretary of the Interior shall at once certify such amounts to the Secretary of the Treasury, who is hereby authorized and directed to make repayment of all amounts so certified out of any moneys not otherwise appropriated and issue his warrant in settlement thereof.”
The issue is more clearly discernible from a sequential statement of the agreed facts and the history of the case in its passage through the Land Office.
The plaintiff’s original entry was made on November 20, 1878, in the land office at The Dalles, Oreg. The purchase embraced a hundred-and-sixty-acre tract composed of two eighties in separate quarters of an odd-numbered section, for which the land office officials fixed a price of $400, or $2.50 per acre, under the preemption laws. All of the above land was part of an odd-numbered section included in the grant of public lands to the Northern Pacific Railroad Co. by the act of July 2, 1864, 13 Stat. L., 365. The Northern Pacific Railroad Co. at the time of the grant contemplated the building of a line of road between Walla Walla, Wash., and Portland, Oreg., and to this end accepted the foregoing grant, filed in the land office in the year 1870 what is familiarly known as its map or line of general route, whereupon the commissioner withdrew, by proper executive order, *296 dated February 14, 1872, all the lands embraced within the railroad grant from public entry. The railroad company subsequently abandoned the route, never filed a map of definite location, never constructed any portion of the projected line, and the Congress of the United States, by the act of September 29, 1890, 26 Stat. L., 496, forfeited the grant. It is not denied that said proposed line, as shown by the map of general route, is coterminous with the land here in controversy, nor that the plaintiff did not in good faith make the entry and was fully qualified to do so. The plaintiff applied to the Secretary of the Interior for a refund of $200, or $1.25 an acre, under the act of March 26, 1908, insisting that, under the law, the land was public, subject to preemption entry, and that he had been illegally charged this excess amount. The Secretary denied the application on June 16, 1913, predicating his denial upon a clear misapprehension of the true state of facts, for, in the course of the decision, it appears that the department treated the entry as one made within the primary or place limits of the grant to the railroad company ascertained from the map of definite location filed by the company.
The plaintiff then began suit in this court on the claim as erroneously prosecuted before the department, subsequently dismissing the same when the error of fact was discovered. A second application was then made to the department for repayment, in which claim it was positively shown that no map of definite location was ever filed by the railroad company, and notwithstanding this undisputed fact the department again refused a repayment on July 22, 1916, saying in part as follows:
“ The contentions of the applicant are foreclosed against him by the departments’s prior decisions in the cases of Jesse S. Elliott (25 L. D., 309) and William F. Brown (35 L. D., 177) and the department does not feel warranted in disturbing such long-established rule of adjudication.”
Thus it appears that the plaintiff was again compelled to resort to this court for an adjudication of his claim. The long-continued and consistent construction given to an ambiguous statute by the department of the Government *297 charged with its administration is not to be overruled “ except for cogent reasons.” This principle of law is notoriously fundamental, but it can not be invoked in cases where a decision of the Supreme Court subsequently interposes and points out with precision the error of the same, especially so where it appears that the Congress recognized by the passage of remedial legislation the rights of claimants to prefer claims for illegal exactions subsequent to said decisions.
The plaintiff is entitled now and was entitled before the department to have his case adjudicated under the existing status of the law. He can not be legally foreclosed by reference to decisions without present applicability or by an apparent hesitancy to disturb rulings which upon reexamination possess no greater legal efficacy than age. As a matter of fact the decisions referred to are wholly inapplicable to the present issue. In the Elliott case repayment was applied for under the repayment act of June 16, 1880, the decision was rendered in October, 1897, and was clearly erroneous by the subsequent decision of the Supreme Court in Nelson v. Northern Pacific Railway, 188 U. S., 108. The Brown case followed the Elliott case, the decision being announced in September, 1906; again the act of June 16, 1880, was involved, and the land office very properly followed the decision of the Supreme Court in Medbury v. United States, 173 U. S., 492. The plaintiff herein preferred his claim under the act of 1908, a statute broader and much more comprehensive in its terms, a repayment act designed to afford relief to claimants, wherein it appears that any payment in excess of the amount lawfully required shall be refunded.
The case presents the single issue, Was the land entered subject to entry under the preemption laws in the face of the grant of the same lands to the railroad company ? If so, the legal charge was one dollar and a quarter per acre. It is, of course, quite evident that if by filing the map of general route the railroad company acquired the full extent of its grant, each alternate odd section for twenty miles on each side of its proposed line, then the land entered by the plaintiff belonged to the company and the entry should not have been received at all, for it was not made until 1878 and the map *298 was filed in 1870; keeping in mind that in any event the plaintiff’s entry was part of an odd numbered section and not embraced within the even numbered sections reserved by the Government, which under the law could not be disposed of for less than two dollars and fifty cents per acre.
In the case of Nelson v. Northern Pacific Railway, supra, decided January 26, 1903, the Supreme Court had under review the granting act of July 2,1864. In an exceedingly complete and exhaustive opinion, Mr. Justice Harlan went into the very phase of the controversy presented by this record; in fact, the case as there decided was presented to the court from a much more favorable attitude, in so far as the Government is now concerned, than the present one. The facts disclosed that the entryman made his entry subsequent to the filing by the company of its map of general route but prior to its one of definite location, and the court held that he could not be divested of his legal title to the land entered, notwithstanding the company completed its line and otherwise occupied the grant. The court said:
“ It results that the railroad company did not acquire any vested interest in the land here in dispute in virtue of its map of general route or the withdrawal order based on such map; and if such map was not 1 free from preemption or other claims or rights,’* or was ‘ occupied by homestead settlers ’ at the date of definite location on December 8, 1884, it did not pass by the grant of 1864.”
The lands here in question were under the foregoing decision public lands and open to entry under the public land laws up to the date of the filing by the railroad company of its map of definite location. As concisely stated in the Nelson case, <£ until definite location the land covered by the map of general route was a ‘ float ’; that is, at large.”
Judgment will be awarded the plaintiff for $200. It is so ordered.
Hat, Judge; DowNet, Judge; BarNet, Judge, and Campbell, Chief Justice, concur.