## BANG v. UNITED STATES.

### No. 23.

District Court, D. Minnesota, Fifth Division.

Feb. 10, 1940.

536

N. B. Arnold and Jay H. Hoag, both of Duluth, Minn., for plaintiff.

Victor E. Anderson, U. S. Atty., of St. Paul, Minn., for the defendant United States.

SULLIVAN, District Judge.

The jurisdiction of this Court is invoked under the provisions of the Tucker Act (Act of March 3, 1887, as amended, U.S.C.A. Title 28, Section 41, Subdivision (20), and in accordance with said Act this cause was tried by the Court without a jury.

The plaintiff is a citizen of the United States, and now is, and for more than thirty years has been a resident of the Town of Solway, St. Louis County, Minnesota, and is seventy-eight years of age. Prior to October, 1918, he was a farmer in said township and had a residence, farm buildings and personal property situated in and upon the premises he occupied.

On the 12th day of October, 1918, prior thereto, and for some time thereafter, the railroads of the United States, and particularly the Great Northern Railroad, operating in the County of St. Louis, Minnesota, were under federal control, and were operated by the Director General of Railroads, as Agent of the President of the United States, under the Transportation Act. Act March 21, 1918, 40 Stat. 451. A devastating forest fire swept northeastern Minnesota on said date, covering an area of approximately two thousand square miles, destroying farm and timber lands, buildings and personal property situated therein, with the resultant damage of approximately $40,-000,000, and causing injury to more than two thousand persons and the death of approximately five hundred persons.

As a consequence of the loss and damages sustained by a large number of persons, a large number of law suits, or actions, were commenced by said persons against the Director General of Railroads to recover therefor. Following the bringing of said actions against the Director General, certain of said cases, generally referred to as test cases, were tried in the District Court of St. Louis County, Minnesota. The plaintiff herein commenced two actions in the District Court of St. Louis County, Minnesota, one for the recovery of damages to his property, the judgment roll of which has been received in evidence and is identified by State Clerk of Court's file number 48,181, and the other to recover for his personal injuries is in evidence in this case and bears State Clerk of Court's file number 48,180. The so-called test cases were finally concluded, and the courts of Minnesota determined that said fires resulted from the negligent operation of the railroads then under government control.

Thereafter, James C. Davis, as Agent of the President, and the sole defendant, inaugurated the policy of settling said

claims within certain areas. The proposition of settlement submitted to the claimants outlined and defined the areas in which settlement would be made, and fixed the percentage that would be paid by the railroad administration in such different sections of the burned areas.

The Town of Solway, where the plaintiff resided, was located within a litigated area wherein the Director General agreed to pay forty per cent. of the amount at which each claim had been valued. In the offer of settlement, the government required that itemized, verified claims of the claimant be filed, covering the loss of, and injury to property, and a separate verified claim to cover injuries to persons, and wrongful death claims. Following said proposition of settlement, the plaintiff filed his claim for loss of property, and a separate claim for injury to his person. The said claims were investigated by the government agents, and a settlement was reached whereby it was agreed between the agents of the government and the claimant that the total amount of the damage to his property was $7,000, and that the damage occasioned him by reason of injuries to his person was $10,000. Written stipulations were entered into, in conformity to the settlement proposition, and then, because of the refusal of the Director General of Railroads to pay the full amount of said claims, became the basis of a stipulation providing for judgments in the District Court of St. Louis County, Minnesota, in the sum of $2,800 for the property damage sustained by plaintiff, and $4,000 for the personal injuries sustained by him. These judgments were paid and satisfied. Apparently the plaintiff herein and other claimants similarly situated had no alternative but to accept payment of their claims on this basis, other than the prosecution of their law suits, thousands of which were pending, and which could not have been concluded without much expense and would have taken many years to finally determine. All of said claimants, it is said, were destitute and without means with which to sustain themselves, until the final determination of the litigation. It is the general opinion of persons in the State of Minnesota familiar with said claims that the claimants were under compulsion by reason of their needs as a consequence of the fires, to accept payment of their claims on the basis offered by the Director General of Railroads, in amounts which were substantially less than the value of their claims, as determined by him.

Commencing with the Seventy-first Congress of the United States in 1930, legislation was proposed for the relief of these claimants, and efforts were made to obtain relief for them at the hands of each succeeding Congress, but without avail, until the Seventy-fourth Congress, when the Senate, on June 10, 1935, and the House of Representatives, on August 20, 1935, passed Private Act Number 336, 49 Stat. 2194, which was then approved by the President on August 27, 1935, and became a law. The pertinent provisions of said Private Act Number 336 are as follows:

"That the Secretary of the Treasury is authorized and directed to pay, out of any money in the Treasury not otherwise appropriated, in accordance with certifications of the Comptroller General of the United States under this Act, to each claimant or its or his heirs, representatives, administrators, executors, successors, or assigns, the amount of whose loss, on account of fire originating from the operation of railroads by the United States in the State of Minnesota on or about October 12, 1918, has been determined by court proceedings or by the Director General of Railroads, the difference between the amount of such loss so determined and the amount actually paid by the United States to such claimant less any amount paid to such claimant by any fire-insurance company on account of such fire * * * *."

"Sec. 2. No payment under the provisions of this Act shall be made unless an application therefor is filed with the Comptroller General of the United States by or on behalf of the person entitled to payment within two years after the date of the enactment of this Act. The Comptroller General of the United States shall determine the amount due on any application, and the person entitled thereto under this Act, and shall certify such determination to the Secretary of the Treasury, which determination shall be final. The Comptroller General shall promulgate rules and regulations as to the identity of claimants, the validity of assignments, and all other matters in connection with the determination of the amounts due and the persons to whom such amounts shall be paid under this Act. The amount to be paid under this Act shall be ascertained from the records of the Director General of Railroads, and such records

shall be conclusive evidence of the amount of any such loss, the amount paid by the United States with respect thereto, and the amount paid by any insurance company with respect thereto. Such records shall also be conclusive evidence of the person entitled to payment, except that if in any judicial proceeding in which final judgment has been rendered the right of any person to succeed to the rights of the person who suffered the loss by the fire has been determined, such judgment shall be conclusive as to the heir, representative, administrator, executor, successor, or assignee, as the case may be, entitled to payment. * * * "

In October, 1935, the plaintiff herein filed a claim based upon the facts shown upon the judgment roll, State Clerk of Court's number 48,181, for the balance of his property loss in the sum of $4,200, and at the same time filed a claim based upon the facts shown on the judgment roll, State Clerk of Court's number 48,180, for the balance of his claim arising by reason of personal injuries sustained by him in the sum of $6,-000. The Comptroller General investigated said claims and determined that the claim for property loss was in due form, that it properly identified the plaintiff herein as the claimant, and correctly stated the amount due, certified the same for payment, and the same was paid to the plaintiff herein on or about February 26, 1936. The Comptroller General also investigated the claim of the plaintiff for the balance due him on his claim for personal injuries, determined that the plaintiff was the proper party, that the amount was correct, but refused to certify the same for payment to the Secretary of the Treasury of the United States for the reason, and upon the ground, that it was a claim for an injury to the person of the claimant, and that under said Private Act he was not authorized to certify the same for payment, and that the claimant was not entitled to the balance of his claim under said law.

This suit is brought to recover the amount which plaintiff claims is due him under and by virtue of said Private Act Number 336.

Heretofore, the defendant moved to dismiss this action upon the grounds (1) that said Private Act does not authorize the payment of damages resulting from personal injury or death; (2) that said Act provides for a special administrative remedy which is exclusive and which, in effect, withholds the administration of any remedy under said Act from the courts; and (3)

that the government has not given its consent to be sued upon the claims specified in or based upon said Private Act.

The motion to dismiss was denied by Judge Robert C. Bell on July 29, 1939. Thereafter, an answer was interposed by the government, setting out substantially the same matter which appears in the motion to dismiss.

At the trial of this cause, plaintiff established the facts hereinbefore set out. The government offered no evidence, and is content to rely upon the legal defenses stated in its answer. There is no dispute in respect to the facts, so the questions which the Court is called upon to determine are the same as were raised upon the defendant's motion to dismiss.

The question whether the Act covers damages resulting from personal injuries and death, as well as property loss, has been determined by Judge Matthew M. Joyce in the case of the United States of America v. City National Bank of Duluth, 31 F.Supp. 530, decided January 24, 1939. In that case, the Court exhaustively analyzed the meaning and purport of the terms, "loss" and "damage", as used in said Private Act, and determined that damages resulting from death and personal injury came within the scope and purview of said Act. I am in entire accord with the conclusions arrived at therein. It seems clear and sound logic that the word "loss" in the Act comprehends damages arising from personal injury and wrongful death, as well as damages arising by reason of loss of property.

The defendant's second contention is that the remedy provided in the Act is exclusively administrative, with no power in the courts to review the determination of the Comptroller General. Under said Act there is granted to each claimant who has sustained a loss on account of fire originating from the operation of the railroads in the State of Minnesota, on or about October 12, 1918, the right to a payment by the government of the difference between his loss, as determined in a court proceeding, and the amount actually paid to the claimant.

Section 2 of the Act provides that before payment be made to a claimant certain requirements shall be met and computations made, i. e., (1) application for such payment shall be filed with the Comptroller General by or on behalf of the person entitled thereto within two years from the date of the Act; (2) the Comptroller shall determine the amount due on the applica-

tion; (3) he shall determine the person entitled to, and shall certify such determination to the Secretary of the Treasury, which determination shall be final.

In an examination of the Act, we look in vain for provisions therein which give to the Comptroller General any quasi-judicial or discretionary powers in passing on claims. The Comptroller General is required to ascertain, before payment of any claim, that the same has been filed in his office within two years after the passage and approval of said Private Act. It cannot be said that the ascertainment of the time within which the claim was filed rises to a greater dignity than that of the performance of a clerical or ministerial duty.

Legislative enactment gives the rule for determining the amount due on any application, and the person entitled to payment. Section 2 of said special act provides, inter alia, " * * * The amount to be paid under this Act shall be ascertained from the records of the Director General of Railroads, and such records shall be conclusive evidence of the amount of any such loss * * *. Such records shall also be conclusive evidence of the person entitled to payment * * *."

No question of fact is entrusted to the determination of the Comptroller General. He performs the duties imposed upon him by the Act in a ministerial capacity—acts in a clerical capacity—subtracts the amount theretofore paid from the full amount of the claim as the same was determined in a judicial proceeding. The difference between those items is the amount which the claimant is entitled to receive. The records of the Director General are conclusive evidence of such facts. The Comptroller General is bound by them and makes his computations therefrom. Likewise, as to the identity of the claimant, the records of the Director General of Railroads again give the answer. Here there is no question as to the identity of the claimant, the amount due on his claim, or the fact that it was filed in proper time. The facts are undisputed, but the Comptroller General refused to certify the claim for payment, basing his action upon his construction of the statute—that claims for personal injury are not within the purview of said Act.

While the government may create rights in individuals against itself, and provide only an administrative remedy (United States v. Babcock, 250 U.S. 328, 39 S.Ct. 464, 63 L.Ed. 1011), that was not done in the Act under consideration. In the Babcock case, the statute under consideration authorized and directed the accounting officers to examine into, ascertain and determine the value of the property for which claim was made, and the act further provided that any claim presented and acted upon should be held as finally determined, and should never be thereafter opened or considered. That statute clearly conferred exclusive jurisdiction upon the agents of the Treasury Department to determine all matters involved in the claim. It conferred upon such officers quasi-judicial powers, and their decision was made final and conclusive.

The Act here under consideration has no such provisions; it gives merely a formula for auditing the claims.

Where an administrative decision is arrived at upon a construction of a law, there, being no dispute as to the facts, that determination is open to review by the courts. See Medbury v. United States, 173 U.S. 492, 497, 498, 19 S.Ct. 503, 43 L.Ed. 779; Dismuke v. United States, 297 U.S. 167, 173, 56 S.Ct. 400, 80 L.Ed 561.

It follows that there being no inhibition in the Act to a review of the determination by the Comptroller General, and there being no dispute as to the facts, the decision of the Comptroller General is not conclusive, and the plaintiff has the right to have his claim determined by the court.

We come now to the question of whether or not the government is subject to suit on the right created by said Act for the benefit of the plaintiff and other claimants thereunder. The Tucker Act, as amended (subdivision (20), section 41, Title 28 U.S.C.A.), provides for the bringing of suits against the government. By it, District Courts and the Court of Claims are vested with concurrent jurisdiction "of all claims not exceeding $10,000 founded upon the Constitution of the United States or any law of Congress * * * in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable * * *." There are other provisions, qualifications and exceptions set out in the above Act which are not here pertinent.

The plaintiff contends for jurisdiction of this suit under the Tucker Act upon the ground that his claim is founded upon an Act of Congress, Private Act Number 336,

49 Stat. 2194, under which last mentioned Act he is granted the right to have payment of his claim made. This contention is sound, and has support in the Tucker Act, and in the provisions of said Private Act.

It is sometimes inaptly said that Congress may create a right in individuals against the government, and at the same time not provide a remedy to enforce it, but the correct rule is: "That the United States, when it creates rights in individuals against itself, is under no obligation to provide a remedy through the courts. [Citing cases]. That where a statute creates a right and provides a special remedy, that remedy is exclusive. [citing cases]." United States v. Babcock, 250 U.S. 328, 331, 39 S.Ct. 464, 465, 63 L.Ed. 1011. The Court holds here that, while the Act creates a right, it does not provide a special remedy, nor does it provide any remedy; so the claimant must look to the Tucker Act for his remedy.

Authority for plaintiff's right to maintain this suit is found in the case of Medbury v. United States, supra (173 U.S. pages 492-497, 19 S.Ct. at page 505, 43 L. Ed. 779), wherein the Court, in considering the rights granted to a claimant under a statute similar in context to that of said Private Act, stated: "In this case, it is not a right and a remedy created by the same statute. The statute creates the right to have repayment under the facts therein stated, but it gives no remedy for a refusal on the part of the secretary to comply with its provisions. The person has the right, under the act, to obtain a warrant from the secretary of the interior for the repayment of the excess therein mentioned, and for the purpose of obtaining it he must make his application and prove the facts which the statute provides, and then the secretary is to draw his warrant on the Treasury. This constitutes the right of the appellant. Applying for the warrant is not a remedy. When application for repayment is made, there is nothing to remedy. He has not been wronged. A right of repayment of money theretofore paid has been given by the act, but it is only under the act that the right exists, and that right is to have the secretary, in a proper case, issue his warrant in payment of the claim; and, until he refuses to do so, no wrong is done, and no case for a remedy is presented. After the refusal, the question then arises as to the remedy, and you look in vain for any in the act itself. We cannot suppose that con-

gress intended, in such case, to make the decision of the secretary final when it was made on undisputed facts. If not, then there is a remedy in the court of claims, for none is given in the act which creates the right. The procedure for obtaining the repayment as provided for in the act must be followed, and when the application is erroneously refused the party wronged has his remedy, but that remedy is not furnished by the same statute which gives him the right."

The plaintiff followed the procedure prescribed by said Private Act for obtaining payment of his claim. The Comptroller General, erroneously and under a mistaken conception of the law, refused to certify plaintiff's claim to the Treasury Department for payment. Thereupon, plaintiff had the right to resort to the District Court, or Court of Claims, as he might be advised, to pursue his remedy, there being no remedy furnished by said special act which gave him the right.

Therefore, it is my conclusion that the plaintiff have judgment against the defendant, as prayed for in the complaint herein.